**ROBERT L. MERWIN & CO., INC. and**
**MARITIME CONTRACTORS, Appellants**

v.

**DONALD S. STRONG and**
**CARGO SERVICES, INC., Appellees**

No. 18,171

United States Court of Appeals

Third Circuit

Argued January 30, 1970

Decided July 20, 1970

*See, also, 7 V.I. 282, 585*

RONALD H. TONKIN, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellants*

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellees*

Before HASTIE, *Chief Judge* and STALEY and STAHL,* *Circuit Judges*

OPINION OF THE COURT

HASTIE, *Chief Judge*

This suit originated in the Municipal Court of the Virgin Islands. The matter in dispute is the possession of a warehouse that had been leased by Robert C. Merwin & Co., Inc., to Cargo Services, Inc., and subsequently had been forcibly reentered and repossessed by Merwin against the will of Cargo Services. By claim and counter-claim both parties have asserted that they are entitled to possession of the property and each has sought damages and an injunction against the other. The trial court sustained Cargo Services' counterclaim and awarded it both actual and punitive damages.

On appeal to the District Court of the Virgin Islands, the judgment was affirmed. This appeal followed.

The facts and their legal consequences on the basic issue of right to possession were stated in the district court's opinion as follows:

"It appears that on January 1, 1966 in connection with the sale of a cargo handling business by Merwin & Co. to Cargo Services, Merwin & Co. leased the warehouse at No. 9 Strand Street to Cargo Services for a term of five years, ending December 31, 1970, with a provision that it would be surrendered upon 6 months written notice. On December 8, 1967 Merwin & Co. notified Cargo Services that the lease would be terminated as of June 15, 1968 on which date Cargo Services was requested to surrender possession. However on March 1, 1968 the parties entered into a new lease agreement covering this and other warehouse properties for the period from February 1, 1968 to December 31, 1971 at the same rentals, $525.00 per month in the case of the warehouse here

---

* Judge Stahl heard the argument and participated in the consideration of this appeal but died before decision.

in controversy. Paragraph 6 of this lease agreement provided in pertinent part:

'6. Anything hereinabove to the contrary notwithstanding, it specifically agreed that the reserved rent for the premises known as #9 Strand Street, Frederiksted, St. Croix, V.I. shall be at the rate of $525.00 per month until June 15, 1968, and shall be subject to renegotiation thereafter as per letter from Lessor to Lessee dated December 8, 1967. It is further agreed that the tenancy of the premises known as #9 Strand Street . . . shall be subject to termination, at any time, at the election of Lessor upon six (6) months written notice to Lessee.'

 "Taking the position that the lease agreement of March 1, 1968 did not operate to extend the lease of Cargo Services on the 9 Strand Street warehouse beyond June 15, 1968, Merwin & Co. about the 21st of June, 1968 forcibly took possession of the warehouse by breaking a lock which the defendants had placed thereon and entering the building. I agree with the Municipal Court that Cargo Services, by virtue of the March 1, 1968 lease agreement, had a valid subsisting lease on the warehouse continuing after June 15, 1968 and that the action of Merwin & Co. amounted to forcible entry and detainer. In defense of its action Merwin & Co. relies upon paragraph 6 of the March 1, 1968 lease agreement, particularly the statement that 'the reserved rent . . . shall be at the rate of $525.00 per month until June 15, 1968, and shall be subject to renogotiation† thereafter, as per letter . . . dated December 8, 1967.' Somehow, this language is thought to bring into the new agreement the notice of termination as of June 15, 1968 which was given by the letter of December 8, 1967. The Municipal Court, however, did not think so nor do I. The acceptance of the new lease of March 1, 1968 involved the implied surrender of the old lease of January 1, 1966, 32 Am. Jur., Landlord and Tenant § 910, and the notice of termination given under the old lease fell with it. The reference to the letter of December 8, 1967 relates solely to the renegotiation of the rental rate and not to the renewal of the lease. The fact that the December 8, 1967 letter does not deal with renegotiation of rental is immaterial. The language is that of Merwin & Co. and if it is ambiguous, as it appears to be, the ambiguity must be resolved against that corporation as its

---

† So in original.

draftsman, 32 Am. Jur. Landlord and Tenant § 128. Moreover the presence in paragraph 6 of an express provision authorizing the lessor to terminate the lease on the 9 Strand Street warehouse on six months written notice definitely negatives the idea that the lease was to terminate at all events on June 15, 1968, only three and one-half months later. I conclude that the Municipal Court rightly granted Cargo Services judgment for possession of the warehouse."

The quoted statement of the facts is accurate and we agree with and adopt the district court's legal analysis and conclusion.

■ There remains the question of damages. The trial court awarded punitive damages in the amount of $500 and the district court affirmed that award. Since the record shows an entry that was both unjustifiable and forcible, though at a time when the building was vacant, we cannot find any abuse of discretion in this small punitive award.

■ The matter of actual damages involves different considerations. The trial court awarded the lessee $28.33 per day from the date of unlawful eviction until the lessee should be restored to possession, and the district court affirmed the award, finding that the amount "appears to be the rental rate under [the] lease reduced to a daily basis." However, while this might be the proper measure of damages against a defaulting lessee, we think it erroneous when applied against a lessor that wrongfully has evicted the lessee. Normally, the lessee's loss is that part, if any, of the value of the leasehold that is in excess of the reserved rent, including in the case of commercial property any loss of profits that can be shown on other than a speculative basis to have resulted from the wrongful deprivation of possession. Slater Realty Corp. v. Meys, 1948, 137 N.J.L. 263, 59 A.2d 650; Walker & Edmonds v. Cockfield, 1904, 111 La. 595, 35 So.2d 778; Ardell v. Milner, Fla. App. 1964, 166 So.2d 714. Moreover the lease dated March 1, 1968,

which governed the parties at the time of eviction, provided for rental of $525.00 per month, or $17.50 per day, rather than the $28.33 per day assumed by the lower courts.[1] Although it is conceivable, as urged by the lessee, that the trial court made some estimate of value from which the reserved rent was deducted to yield $28.33 per day in damages,[2] there is neither evidence nor any finding to warrant that award on any basis other than the doubly erroneous theory that it represented the daily rental. In addition, since the case must be remanded for proof of the value of the leasehold and lost profits or other recoverable damages, the lessor should have the opportunity to show whether any loss that otherwise would have been sustained was mitigated by obtaining and operating a warehouse elsewhere.

■ It also merits consideration on the issue of damages that the lease gave the lessor the unqualified right to terminate the tenancy on six months written notice. On at least three occasions subsequent to the signing of the new lease on March 1, 1968, the lessor notified the lessee in writing that the lessee's use of the warehouse would have to terminate on June 15, 1968. On June 17, the lessor informed the lessee that the property had been leased to another party as of that date. Although the lessor did not respect the lessee's right to retain possession for a six-month period after notice, the lessor believed that the March 1st lease provided for termination with respect to the warehouse on June 15. Despite judicial vindication of

---

[1] Both the complaint and the counterclaim contain allegations of damages in the amount of $28.33 per day. These allegations were denied by the responsive pleadings.

[2] There are some indications of the value of the warehouse in the record, but they do not support the amount of $28.33 per day in damages after the deduction of the reserved rent. In a letter dated May 28, 1968, the lessor, who maintained that there would be no valid lease of the warehouse after June 15, 1968, suggested negotiation of new terms to provide a rental rate of $2.50 per square foot for the first year, and $3.00 per square foot thereafter, yielding monthly rates of $31.25 and $37.50 respectively for the 4,500 square foot warehouse.

the contrary position, we think that under the circumstances, the lessee knew by June 17, 1968 that the lease would be terminated, and we think that it would be unjust to permit damages covering more than the six-month period beginning June 17, 1968, during which the lessor was obligated to permit the lessee to remain in possession. Damages, if any, should be awarded for that period, but no longer.

■ Finally, the lessor's reserved right to terminate the lease on 6 months notice raises a question whether at this late date the lessee should be restored to possession. The municipal court rendered its judgment on July 5, 1968, only three weeks after the landlord had demanded possession and evicted the tenant. At that time, therefore, the tenant was entitled to be restored to possession and to continue undisturbed for more than 5 months. But now, two years later, we think it would be as unjust and contrary to the intendment of the lease to reinstate the lessee's possession as it would be to give it damages covering more than a 6 month period.

Accordingly, the municipal court's ruling on liability, its award of punitive damages and its award of counsel fees, as affirmed by the district court, will be affirmed. However, so much of the judgment as covers actual damages will be vacated and the case remanded to the district court for remand to the municipal court for a redetermination of actual damages consistent with this opinion. In this court, each party shall bear its own costs.