NANCY B. SCHINDEL, Plaintiff

v.

PELICAN BEACH INC., Defendant

Civil No. 267/77

NANCY B. SCHINDEL, Plaintiff

v.

ROBERT and CATHERINE CUMMINGS, Defendants

Civil No. 713/77

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

April 20, 1979

238

240

241

DESMOND L. MAYNARD, ESQ., St. Thomas, V.I., *for plaintiff*

CHARLES S. WAGGONER, II, ESQ., St. Thomas, V.I., *for defendants*

FEUERZEIG, *Judge*

### MEMORANDUM OPINION

The plaintiff has brought actions against each defendant for damages and injunctive relief, alleging that the defendants have breached several covenants of a deed to property

that fronts on St. John's Bay in an area in St. Thomas known as Pelican Bay Beach.[1]

The defendant, Pelican Beach Inc. (hereinafter Pelican), acquired Parcel No. 11B, Estate Smith Bay Nos. 1, 2 and 3, East End Quarter, St. Thomas, Virgin Islands (hereinafter Parcel 11B), by a warranty deed dated September 19, 1957, from David E. and Eleanor M. Maas.[2] Parcel 11B subsequently was subdivided by Pelican and the lots sold in fee simple to various individuals. One of the lots, Parcel No. 11B-3 (hereinafter 11B-3), was sold by Pelican by warranty deed dated March 4, 1958 (hereinafter the 1958 deed), to John and Agnes Rahlff.[3] By warranty deed of August 26, 1968 (hereinafter the 1968 deed), the Rahlffs conveyed 11B-3 to the plaintiff, Nancy Schindel, subject to the "conditions, covenants, restrictions and zoning ordinances of record".[4]

On September 16, 1968, defendants Robert and Catherine Cummings acquired Parcel No. 11B-10 (hereinafter 11B-10) from Carl and Florence Aster.[5] Parcel 11B-10, like 11B-3, is a part of Parcel 11B. The original warranty deed for 11B-10 contained the same covenants, restrictions and easements as the 1958 deed,[6] and the conveyance to the Cummings was made expressly subject to these covenants.

The provisions of the 1958 deed that are pertinent to these two cases provide that 11B-3 was transferred by Pelican to the Rahlffs,

---

[1] Civil No. 267/1977 came on for a hearing on November 4, 1977, January 27, 1978, and February 2, 1978. Civil No. 713-1977 was instituted on November 15, 1977, and was consolidated and was heard in conjunction with Civil No. 267/1977 on January 27 and February 2, 1978. The court requested counsel to submit proposed findings of fact and conclusions of law. This prompted the parties to request transcripts of the trial. As a result, proposed findings and memoranda in support thereof were not submitted until December 22 and 27, 1978. Before the findings and memoranda were submitted, the court, at the request of the parties, inspected the property in the presence of counsel.

[2] Defendants' Exhibit H.

[3] Plaintiff's Exhibit 1.

[4] Plaintiff's Exhibit 2.

[5] Plaintiff's Exhibit 8.

[6] Compare Plaintiff's Exhibit 9 with Plaintiff's Exhibit 1.

■ TOGETHER with all the appurtenances and all the estate, title, rights and interest of [Pelican], its successors and assigns, in and to said premises, *including a perpetual easement to [the Rahlffs], their or the survivor of them [sic] heirs and assigns, to run with the land over all roads in and to Parcels Nos. 11B and 12 which are now in existence or shall hereafter be constructed for ingress to and egress from the public road and otherwise.* This deed shall be subject to the restrictions set forth hereafter, which shall apply to all parts or parcels of Parcels Nos. 11B and 12 for the benefit of [Pelican], the [Rahlffs], and all subsequent grantees, the said restrictions to run with the land. Whenever the restrictions set out hereafter are more restrictive than the provisions of any zoning laws applicable to Parcels Nos. 11B and 12, these restrictions shall control.

a. *No structure other than a one-family residence, together with the customary appurtenances (guest house, garage, cabana, servants' quarters, if any) shall be erected upon the parcel of land herein described;* and such residential structure including any appurtenances shall be so situated that no part of the said structure or any appurtenances shall be less than 25 feet from any boundary line of said parcel, except the boundary line of the common roadway upon which said parcel abuts. . . . *No such residence or appurtenances shall be used as a commercial guest house or other commercial rental purposes.*

. . .

j. *The common roadways (except any road running substantially parallel to the sea between Parcels 11B-3, 4, 5 and 6 and the sea, which said roadway [Pelican] shall have the right to abandon or relocate in its discretion) shall be constructed by and at the cost and expense of [Pelican] in a proper manner with adequate ditches, drains and culverts to provide proper drainage.* Thereafter, [Pelican, the Rahlffs] and all subsequent purchasers of parts of Parcels Nos. 11B and 12 Estate Smith Bay, shall maintain the common roads in Parcels Nos. 11B and 12 in reasonably good condition on a pro rata expense basis in a proportion equal to the proportion that their respective parcels bear to all of the land in Parcels 11B and 12 for use of the other lot owners until such time as the Government accepts a dedication of said roads . . . . Maintenance shall not include paving, widening or extending said roads.

k. The [Rahlffs] *shall have a perpetual easement over, on and to the beach area of St. John bay on the easterly side of Par-*

*cel No. 11B* for the use by himself and the members of his immediate family and bona fide house guests, for recreational purposes only, but this use shall not include the use of any beach club facilities that may be constructed in said beach area by [Pelican]. The beach area shall be an area 50-feet wide paralleling St. John's Bay (except in Parcel No. 11B-8). (Emphasis added.)

None of the parties disputes the validity of any of the above conveyances, and all agree that the plaintiff is the successor in interest to the Rahlffs and thereby is entitled to enforce the deed restrictions. See Restatement of Property §§ 487, 542 (1944).[7] It also is undisputed that the Cummings are the sole Pelican stockholders, with Mr. Cummings being president and Mrs. Cummings being secretary-treasurer.[8] The parties also agree that Pelican drafted the deeds for each lot of Parcel 11B and that each deed has the same restrictions that are in the 1958 deed.[9] This presumably was done to insure that the area retained a certain character and ambiance that would be conducive to the establishment of Pelican's beach club.

Sometime between 1960 and 1968 Pelican constructed a wall along the entire southeast boundary of 11B-3 and the eastern boundaries of 11B-4, 5 and 6.[10] The wall is approximately 24 to 30 inches high,[11] and is entirely on Pelican's property—the unsubdivided portion of 11B (hereinafter

_____

[7] The rules of the common law, as expressed in the Restatements of Law approved by the American Law Institute, shall be the rules of decision in the courts of the Virgin Islands, in the absence of local laws to the contrary. 1 V.I.C. § 4. See also Varlack v. S.W.C. Caribbean, 13 V.I. 666, 550 F.2d 171 (3d Cir. 1977); but see Murray v. Beloit Power Systems, Inc., 450 F.Supp. 1145 (D.V.I. 1978).

[8] Tr. III at 11; Tr. II at 11–12.

[9] See, e.g., Tr. II at 33, 36; Deposition of David Maas at 8–9.

[10] The testimony failed to reveal the exact date—or even the approximate date—of the wall's construction. The plaintiff, in her proposed findings of fact, paragraph 1, contends the wall was constructed between 1958 and 1968. The court is convinced, however, that the wall was not constructed before 1960 and that it probably was built much later. The deposition testimony of Agnes Rahlff discloses that she and her husband did not move onto the property until 1960, Tr. I at 32, and that they used to go to the beach by the most direct easterly route "until Bob Cummings built a wall . . . and we had to go over it." Tr. I at 40. In any event, the exact date of the wall's construction is not crucial.

[11] Tr. I at 96–97.

11B Prime).[12] The court finds, based on the depositions of John and Agnes Rahlff, that the Rahlffs continued to use the same route to the beach before and after the wall was built. They would leave their property from the corner nearest the beach and walk along a route on 11B Prime down to the beach.[13] After the wall was constructed, they used this route simply by stepping over the wall.[14] Although inconvenient, the wall was not high enough to block the Rahlffs' passage or to create a substantial hardship for them. They continued to use that route because it was the "shortest access to the beach"[15] and because the Rahlffs believed their deed gave them a right to use that route.[16]

After Mrs. Schindel acquired the property in 1968, she and her husband utilized the same route as the Rahlffs to gain access to the beach. Sometime between January and April of 1976 Pelican constructed a four- to five-foot high chain link fence topped with three strands of barbed wire along the length of the wall.[17] In addition, Pelican placed a locked gate adjacent to the southernmost corner of 11B-3[18] at the bottom of the road that runs along the south-southwest boundary of 11B-3, which gate is connected to the wall and the fence. Because of the wall-fence and gate Mrs. Schindel's direct easterly access to the beach has been blocked. Although at various times over the years Mr. and Mrs. Schindel objected to the wall, no legal action was

---

[12] Tr. I at 60–61.

[13] Utilizing the map attached hereto as Appendix A, the Rahlffs would leave their property at Point 2, walk across 11-B Prime along Point 3 down to the beach at Point 5. Their house, now the house of plaintiff, is located at Point 1. See Tr. I at 41–43, 58, 61; Deposition of John Rahlff at 6.

[14] The wall was constructed approximately between Points 3 and 4 of Appendix A and runs in a northerly direction on 11-B Prime adjacent to Parcels 11B-3, 4, 5 and 6.

[15] Tr. I at 67.

[16] Tr. I at 62; Deposition of John Rahlff at 5–6.

[17] Tr. I at 96–97.

[18] Point 12 on Appendix A.

taken until Civil No. 267-1977 was instituted on October 8, 1976.[19]

The court further finds that sometime in 1969 the Cummings had a tennis court built on their land, Parcel 11B-10.[20] The Cummings and Pelican subsequently entered into an arrangement by which guests at the Pelican Beach Club were allowed to use the tennis court free of charge. In fact, the tennis court was advertised in Pelican's brochures as one of the amenities offered to Pelican's guests.[21] Although Mr. Cummings testified that neither plaintiff nor anyone on her behalf ever raised any objection to the tennis court before these suits,[22] the court finds that on at least two occasions plaintiff's agents put Pelican's attorneys on notice that the tennis court was in violation of the restrictive covenants of the deed.[23]

The court further finds, and it is undisputed, that at no time has Pelican ever constructed ditches, drains or culverts for the common roadways of Parcels 11B and 12.[24] Finally, there is no dispute that Pelican has constructed windbreakers and has erected a barbed wire fence on Parcel 11B Prime, both of which run substantially parallel to to the sea.

With this factual backdrop, the court turns to the issues upon which a resolution of this matter depends, and the five alleged deed violations, which will be treated seriatim.

### Access to St. John's Bay

The plaintiff contends that the wall and fence violate paragraph k of the deed by denying her the easement "to

---

[19] The action was instituted in the United States District Court but was transferred to this court by order of Judge Warren H. Young on April 4, 1977.

[20] Tr. II at 11.

[21] Plaintiff's Exhibit 3.

[22] Tr. III at 51.

[23] Defendants' Exhibit D, dated April 7, 1969, and Plaintiff's Exhibit 14, dated January 29, 1976.

[24] Defendants' proposed findings of fact, paragraph 5.

the beach area of St. John Bay".[25] Alternatively, plaintiff argues that irrespective of her rights under the deed she acquired a prescriptive easement across Pelican's land from the easternmost corner of her property to the road on Parcel 11B Prime that leads to the beach[26] because both she and the Rahlffs regularly walked this route for a period in excess of 15 years.[27]

 Pelican denies that paragraph k grants the plaintiff an easement across its land, relying on McCarter v. Pelican Beach, Inc., Civ. No. 135-1965 (D.V.I., Div. St. T. & St. J., April 19, 1967) (Gordon, J.). In McCarter, the plaintiffs were the owners of Parcel No. 11B-5 and similarly sought access to the beach over 11B Prime. In that action the court held:

> That plaintiffs are not entitled to an easement directly east from their parcel to the beach across Parcel 11B for ingress and egress to the beach but that plaintiffs' ingress and egress to and from the said beach is through the entrance for the public of Pelican Beach Club.

Pelican contends that this holding is res judicata in the present actions. It also contends that the statute of limitations and laches bar the plaintiff's action.[28] Finally, in response to plaintiff's alternative contentions, Pelican asserts that Mrs. Schindel's passage over 11B Prime has not been adverse, but was permissive. Adversity, of course, is necessary to establish a prescriptive easement. 28 V.I.C. § 11.

 The court does not believe that the plaintiff's action is barred by res judicata. Pursuant to the Restatement

---

[25] See p. 244–45.

[26] Point 3 to Point 5 on Appendix A.

[27] Pursuant to 28 V.I.C. § 11, 15 years is the statutory prerequisite for a prescriptive easement.

[28] Pelican, in its second amended answer, also interposed the defense of estoppel. Apparently, Pelican and the Cummings have abandoned this defense because no reference to estoppel appears in their post trial memorandum of points and authorities or in their proposed findings of fact and conclusions of law. In any event, the defense is without merit and is unsupported by the evidence.

248

of Judgments § 93(b) (1941), a person not a party to an action, other than an action in rem, is not bound by the adjudication of any matter decided in the action.[29] In fact, the judgment normally has no evidentiary value in a subsequent action between one of the parties to the judgment and a stranger. See id. Comment b; see also id. Comment d. The court has reviewed the District Court file and concludes that McCarter clearly was not an in rem action.[30] In rem proceedings affect the interests in the property at issue "not merely of particular persons but of all persons in the world." Restatement, supra, § 32, Comment a; see also Restatement (Second) of Judgments § 73, Comment a (Tent. Draft No. 1, March 28, 1973). In order to obtain a valid and binding in rem judgment, all parties whose interests in the property are or may be affected are entitled to reasonable notice and an opportunity to be heard. Restatement, supra, § 32, Comments f and g. The notice must be "sufficiently calculated to give knowledge of the proceeding" in light of all the circumstances. Id. Comment f; cf. Restatement (Second) of Judgments § 9, Comment a (Tent. Draft No. 5, March 10, 1978). The McCarter record reflects no attempt to effect personal service on Mrs. Schindel or the other owners of the subdivided lots of Parcel 11B or 12. Nor is there any evidence of constructive service on any interested party by publication, posting or mailing; nor did the defendant ever seek to implead or join Mrs.

---

[29] Section 93 provides in pertinent part:
"Except as stated in §§ 94–111, [sections not relevant here] a person who is not a party or privy to a party to an action in which a valid judgment other than a judgment in rem is rendered

. . .

(b) is not bound by or entitled to claim the benefits of an adjudication upon any matter decided in the action."

[30] Although the plaintiffs in McCarter sought only damages, the action was in the nature of a quasi in rem proceeding rather than one in personam. This is so because plaintiffs' entitlement to damages partly was predicated on their alleged right of access over Parcel 11B Prime. The judgment declaring that plaintiffs had no right of access across 11B Prime had the effect of adjudicating the parties' "rights to property", see Restatement, supra, §§ 2 and 3, and thus is more appropriately described as a quasi in rem judgment.

249

Schindel or any of the other lot owners of Parcels 11B or 12. Thus, McCarter, while binding on Pelican and the McCarters, is not res judicata as to Mrs. Schindel nor is Mrs. Schindel collaterally estopped by the decision.

■■ The discussion of the application of McCarter, however, cannot end with an analysis of res judicata because McCarter was decided by the District Court of the Virgin Islands, the appellate court of any order or judgment of this court. 4 V.I.C. § 33 (1977 Supp.). Thus, McCarter must be considered the law of the Virgin Islands unless otherwise found to be inapplicable. This court does not believe that McCarter is binding for two reasons. First, the McCarter decision, albeit brief, contains sufficient findings of fact regarding the intent of the parties for this court to conclude that the basis for the holding is factually distinguishable from the present cases. The court in McCarter specifically found:

> 5. That the terms of said deed are ambiguous as to the means of ingress and egress to said beach by plaintiffs but that *the intent of the parties* to the deed was that the plaintiffs should have ingress and egress to said beach by means of entering and leaving the beach through an area that is now the entrance for the public of Pelican Beach Club. (Emphasis added.)

This court agrees with McCarter that the deed is ambiguous but since it was drafted by Pelican, it must be construed against Pelican. Restatement of Contracts § 236(d) (1932); Restatement (Second) of Contracts § 232 (Tent. Draft Nos. 1–7, 1973). While the evidence in McCarter caused the District Court to conclude that the parties intended that the McCarters have access by means of the public entrance,[31] the evidence in this case reveals that it was understood by the Rahlffs that they would have access to the beach from their property directly across Pelican's

---

[31] On Appendix A this would be accomplished by travelling along the route that is between numbered points 8 and 9 and then from Point 9 to Point 10.

property, 11B Prime. Moreover, they acted in conformity with that intent. As a result, when the Rahlffs sold 11B-3 to Mrs. Schindel, she too expected that she would have direct access to the beach and likewise acted in conformity with that intent.[32] Had the District Court in McCarter had the facts of this case before it, that court presumably would have reached the result this court reaches.

 Pelican's statute of limitations defense is equally unavailing. Actions for the determination of "any right or claim to or interest in" real property may be commenced within the limitations provided for actions for the recovery of the possession of real property. 5 V.I.C. § 32. This, pursuant to 5 V.I.C. § 31(1)(A), is twenty years. Clearly, plaintiff seeks a determination of her "right or claim to or interest in" the alleged easement across Pelican's land. Having been commenced well within the twenty-year limitations period, plaintiff's actions for access to St. John's Bay are not barred by the statute of limitations.[33]

 The defense of laches also is unavailing on the issue of access to St. John's Bay. As the court already has found, the fence running the length of the wall was not erected until sometime between January and April of 1976, and Civil No. 267-1977 was instituted in October of the same year. Thus, there was no more than a ten-month delay between the erection of the fence and the commencement of legal action. Without a further factual showing of prejudice this court cannot find that a ten-month delay in bringing suit is so inherently prejudicial as to constitute laches as a matter of law. This is especially so in view of the testimony that the plaintiff was not on the premises when the

---

[32] Tr. I at 41, 58, 61, 85–90; Tr. III at 38, 52, 54, 107–08, 110; Deposition of John Rahlff at 5–6.

[33] Pelican and the Cummings also rely on the statute of limitations defense to plaintiff's claim for relief with respect to the tennis court, the common roadways and the windbreakers. Each of these claims also falls within the scope of 5 V.I.C. § 32, and thus the statute of limitations defense is equally unavailing.

fence was erected, but only heard of it afterwards.[34] See Restatement of Property § 562, Comment b (1944) (one factor to be considered in determining whether plaintiff is guilty of laches is the opportunity he had to discover the fact of the violation). In the absence of some showing of disproportionate hardship on Pelican's part in the erection of the fence—a showing that was not made and which this court does not believe could have been made—this court does not believe that laches constitutes a bar to the plaintiff's action. See Restatement, supra, § 563.

The question remains, though, as to whether Mrs. Schindel is guilty of laches as to the 24- to 30-inch wall that was constructed sometime between 1960 and 1968. The court is of the belief, particularly in view of the relief that will be ordered, that the plaintiff is not barred by laches. First, although there is no evidence that the Rahlffs ever complained of the wall, they continued to cross over it on their way to the beach. In fact, Mr. Cummings never advised them that they were not to cross over the wall or walk across Pelican's property.[35] Moreover, it also is clear that Mrs. Schindel, or persons on her behalf, objected to the wall long before the fence was constructed,[36] and she never acted in such a way as to preclude her from seeking injunctive relief.

Consequently, having concluded that the deed is ambiguous and is to be construed against its drafter, Pelican; having concluded that it was the Rahlffs' and Mrs. Schindel's understanding that they had a right to direct easterly access from 11B-3 to the beach; having concluded that they always acted in conformity with that understanding even after the erection of the wall, and having concluded that the plaintiff's claim is not barred by res judi-

---

[34] Tr. I at 96.
[35] Tr. I at 41.
[36] See Defendants' Exhibits D, E and F.

cata, the statute of limitations or laches, the court is compelled to conclude that Mrs. Schindel is entitled to a direct easterly access across Parcel 11B Prime to the beach.

██ Having decided that plaintiff has right of direct easterly access to the beach, the court must consider what relief is appropriate. In this regard, the court has reviewed the various alternatives. The most drastic would be to order complete removal of the wall and fence in front of plaintiff's property. Keeping in mind the serious concern of Pelican for its guests and the relative increase in value that the various measures would bring to the plaintiff's property, the court believes that Pelican should provide the plaintiff access simply by installing a gate with a lock at the easternmost corner of Parcel No. 11B-3[37] and by giving the plaintiff either a key or the combination to the lock, depending upon which type of lock Pelican selects. Pelican also should be required either to remove the wall at the point where the gate is erected or cause steps to be placed on both sides of the wall.

### Perpetual Easement Over Roads

The plaintiff also claims a violation of paragraph [3] of the 1958 deed in that she has been denied a perpetual easement to run with the land "over all roads in and to Parcel Nos. 11B and 12 which are *now in existence* or shall hereafter be constructed for ingress to and egress from the public road and otherwise." (Emphasis added.)

The court believes that it is clear that a road running across Parcel 11B Prime and parallel to the sea was in existence at the time of the 1958 conveyance; that this road is substantially the same route used by the Rahlffs and Mrs. Schindel to get from 11B-3 to the beach, and that this road still exists today.[38]

---

[37] Point 2 on Appendix A.

[38] The road runs in a northerly direction from the vicinity of Point 12 to approximately Points 3–4, then across 11B Prime to the vicinity of Point 5 on Appendix A.

The 1958 deed, by its own terms, recognized the existence of such a road. In paragraph j a parenthetical reference was made to a road "running substantially parallel to the sea between Parcels 11B-3, 4, 5 and 6 and the sea."[39] Moreover, the map of Parcels 11B and 12, P.W.D. No. C3-92-T57, clearly outlined the boundaries of a road, and a copy of this map was "annexed [to the 1958 deed] and made a part [t]hereof."[40] The defendant's own witness, David Maas, the original grantor from whom Pelican acquired Parcel 11B, testified to the existence of access along this route, variously describing it as a "tract",[41] and a "dirt tract".[42] It was not a "narrow footpath", but it was "big enough to drive a pick-up on."[43] It was not paved, but Mr. Maas had a "small dozer" give it a "brush over",[44] and it could accommodate motor vehicles and trucks as well as pedestrians.[45] In fact, Mr. Maas testified that this route is the same route described as a "road" in the 1958 deed,[46] and he sketched it on P.W.D. No. B9-30-T57[47] in approximately the same area where the road appears on P.W.D. C3-92-T57.[48] In addition, defendants concede that this "tract or vehicular roadway" was the roadway referred to in the deed restrictions in paragraph j as the "road running substantially parallel to the sea".[49]

 Even Mr. Cummings recognized that a road of some kind existed. Although he denied that Pelican ever

---

[39] Plaintiff's Exhibit 1.

[40] Defendants' Exhibit A and Appendix A attached hereto. See the figures 434′±, 165′±, and 112′± for the road as depicted on Appendix A.

[41] Tr. I at 228.

[42] Tr. I at 237. Counsel for Pelican, however, appears to have inadvertently referred to this route as a "road". See Tr. I at 236–37.

[43] Tr. I at 249.

[44] Tr. I at 228.

[45] Tr. I at 227, 237; Maas Deposition at 7–8, 12.

[46] Maas Deposition at 12–13. Defendants concede this. See paragraph 3 of Defendants' proposed findings of fact.

[47] Defendants' Exhibit B.

[48] Defendants' Exhibit A, Appendix A hereto.

[49] Defendants' proposed findings of fact, paragraph 3.

constructed or established such a road, he admitted that tire marks were the result of trucks using that route.[50] More damaging, however, was his admission that "everybody" would come onto Parcel 11B by the route in issue, including Mr. Maas,[51] and the "UDT and Navy [who] used to go down there with their jeeps for picnics."[52] Finally, in response to the question—

Was that [route] referring to the dirt track you have described through the palm trees, was that a road in existence that you intended to give the purchasers of lots access over?

Mr. Cummings replied:

Oh, no.[53]

The only reasonable construction of the question and answer, and indeed of the whole of Mr. Cummings' testimony, is that a road, albeit unpaved and rough, did exist in 1958. It was not constructed or established by Pelican, and, based on Mr. Cummings' testimony, it was not Pelican's intention to give access over this particular road to the various Parcel 11B grantees.[54] Pelican merely referred to it in the plan affixed to the 1958 deed and in paragraph j of the deed in case Parcel 11B Prime was subdivided into a beach area for homes because in that event this route would be needed as an access road.[55] This area was not subsequently subdivided, but was used for a hotel and beach cottages.[56] However, despite Pelican's subjective intent, paragraphs [3] and j when construed together are unambiguous insofar as establishing that a road did exist, which ran substantially parallel to the sea, between Parcel Nos. 11B-3, 4, 5 and 6 and the sea. Even assuming an ambiguity, in light of the

[50] Tr. II at 36.
[51] Tr. III at 32–33.
[52] Tr. III at 33.
[53] Tr. III at 34.
[54] Tr. III at 88–89.
[55] Tr. II at 36; Tr. III at 11.
[56] Tr. III at 11.

settled law that instruments are to be interpreted against the drafter, Restatement of Contracts, supra, § 236(6); Restatement (Second) of Contracts, supra, § 232; cf. Union County Industrial Park v. Union County Park Commission, 95 N.J. Super. 448, 231 A.2d 812 (1967), this court finds that the road referred to in paragraph j of the 1958 deed existed at that time, that the parties contracted in reference to it, and that the grantees reasonably believed that they were being given the right of access over it. From these facts the court must conclude that pursuant to paragraph [3] of the deed Mrs. Schindel retains the right of access over that road, it having been a road in existence at the time of the 1958 deed's execution.[57]

 The question remains as to what relief the plaintiff is entitled. As in connection with the question of access to the beach, the court has considered the various alternatives, including complete removal of the gate located adjacent to the southernmost corner of plaintiff's property,[58] ordering that the gate be kept unlocked, or ordering that Pelican issue a key to the plaintiff. The court is mindful of the serious concerns of the defendant for the security of its guests, and the relative increase in the value of the plaintiff's property that the various measures would bring. On balance, the court concludes that the most equitable relief it can fashion is ordering the defendant to issue the plaintiff a key to the gate. This will accommodate Pelican's need for security and the plaintiff's right to a perpetual easement over all roads in and to Parcels 11B and 12.

---

[57] In light of this holding, the court does not reach the issue of an easement by prescription. Although there certainly was ample testimony from which to conclude that the road has not been abandoned or relocated, that question is irrelevant in light of the easement given by paragraph [3] over all roads then in existence. See, e.g, Tr. III at 72. The court is not holding, however, that the road cannot be abandoned by Pelican. Pelican can choose to abandon or relocate the road parallel to Parcels 11B-3, 4, 5 and 6. Thus, it also can decide to do nothing to maintain it. What it cannot do, however, is deny the plaintiff the perpetual easement over the road that is provided by paragraph [3] of the 1958 deed.

[58] Point 12 on Appendix A.

The plaintiff concedes that the tennis court is a "customary appurtenance" to a one-family residence within the meaning of paragraph a of the 1958 deed,[59] but argues that its commercial use should be enjoined. The defendants deny that the tennis court is a "structure" or a "customary appurtenance", although they concede that the small wooden structure adjacent to it does violate the 1958 deed.[60]

The court need not decide the definitional dispute between the parties because it is convinced that laches bars plaintiff's prayer for an injunction. Pursuant to the Restatement of Property, supra, § 562, a plaintiff must act with reasonable promptness in applying for an injunction. See id. Comment b. The plaintiff is not entitled to an injunction as a matter of right, Holmes Harbor Water Co. Inc. v. Page, 8 Wash. App. 600, 508 P.2d 628 (1977); Gilpin v. Jacob Ellis Realties, 47 N.J. Super. 26, 135 A.2d 204 (1957), because its issuance is extraordinary and rests within the sound discretion of the trial judge. Johnson v. Shaw, 137 A.2d 399 (N.H. 1957); Holmes Harbor Water Co. Inc. v. Page, supra; Gilpin v. Jacob Ellis Realties, supra.

In this matter plaintiff waited seven years to file suit. Although Mrs. Schindel put the defendants on notice of the tennis court's alleged violation of the deed as early as April 7, 1969,[61] no legal action was taken until the complaint was filed on October 7, 1976. In the interim, defendant constructed the tennis court, and has made it available to its guests. Pelican has advertised tennis as one of the amenities offered by it to its guests, and has had brochures printed that describe and depict the tennis courts.[62] An in-

---

[59] Plaintiff's proposed findings of fact, paragraph 7.
[60] Defendants' proposed conclusions of law, paragraph 7.
[61] Defendants' Exhibit D.
[62] Plaintiff's Exhibit 3.

junction at this late date would deprive Pelican's guests of an amenity they assumed was available to them. It also might subject Pelican to a breach of contract or restitutionary action or force Pelican into the position of having to make partial refunds to guests. Pelican's reputation certainly would suffer, and perhaps a few of its steady customers would no longer be inclined to return. Further, the present brochures would have to be recalled, and different brochures printed without mention of the tennis courts. In view of these circumstances, the court is of the belief that the plaintiff sat on her rights and should be barred from asserting them. Cf., e.g., Valhouli v. Coulouras, 142 A.2d 711 (N.H. 1958) (a delay of only two years barred plaintiff from obtaining an injunction).

 Finally, plaintiff's husband by letter of January 29, 1976, stated that "the tennis court in its present location does not bother me."[63] Thus, while the tennis court is of some real value to the defendant, the harm, if any, to the plaintiff from this deed violation is de minimis. This brings into operation the doctrine of relative hardship, under which injunctive relief will be denied if the hardship imposed by granting it would be disproportionately greater than the benefits that would be secured by its issuance. Restatement, supra, § 563; see also, Easton v. Careybrook, 210 Md. 286, 123 A.2d 342 (1956); Holmes Harbor Water Co. Inc. v. Page, supra; Union County Industrial Park v. Union County Park Commission, supra; Gilpin v. Jacob Ellis Realties, supra; Rossi v. Sierchio, 30 N.J. Super. 575, 105 A.2d 687 (1954); cf. Restatement of Torts § 941 (1939).[64] The combination of laches and the disproportion

---

[63] Plaintiff's Exhibit 14. Although the property is only in Mrs. Schindel's name, it is clear that her husband has been intimately involved in this ongoing dispute, probably even more so than the plaintiff.

[64] While it might be argued that the facts concerning the tennis court are not significantly different from the wall, the court is not of that belief. First, and most important, no damages have been shown by the presence of the tennis courts. On the other hand, the wall and fence, according to

of hardship bars the plaintiff from the equitable relief she seeks.[65]

*Ditches, Drains or Culverts for the Common Roadway*

As pointed out, Pelican admits it did not construct any ditches, drains or culverts for the common roadways.[65a] The defendant maintains, however, that its sole duty under paragraph j of the deed was to construct the roads with "proper drainage" and that if this could be accomplished without constructing ditches, drains or culverts, it was free to do so. Pelican claims that the road's drainage is, or at least initially was, adequate and that any inadequacies that now may exist are a result of improper maintenance. Mrs. Schindel, on the other hand, contends that the language of the deed imposes an affirmative duty on Pelican to construct ditches, drains or culverts. The court agrees.

■■ The court believes that the language of paragraph j, standing alone, could reasonably be susceptible of both parties' interpretations: However, the evidence made it clear that the common roads—and specifically, the road running from the southernmost corner of the plaintiff's property, then northwest to the public road, then due north to Parcel 12B where the road turns east and leads to the beach and the public entrance to the Pelican Beach Club[66] —were already in existence at the time Pelican acquired

plaintiff's expert, considerably decrease the value of plaintiff's property. Second, the tennis court has never been considered very objectionable. In fact, it has been used principally as a lever by Mrs. Schindel in the discussions between the parties over the years.

[65] Neither Pelican nor Mr. Cummings come into court entirely with clean hands. There was unrefuted evidence that when Mr. Schindel orally objected to the tennis court's construction, he was told by Mr. Cummings that it was only for "personal" and not commercial use. Plaintiff's Exhibit 14; Tr. III at 126–27. However, it very soon became clear that this was not the case. The court, however, does not believe defendants should be estopped to assert plaintiff's laches because of the defendants' wrongful conduct that occurred some seven years before this suit was filed.

[65a] See footnote 24 and accompanying text.

[66] From Point 12 to Point 11 to Point 13 to Point 9 to Point 10 on Appendix A.

Parcels 11B and 12.[67] In fact, Mr. Cummings testified that the above-described road was the means by which Pelican intended all of the grantees of parcels in the subdivision to have access to the beach and thus to enjoy the easement granted to them by paragraph k. In light of this, it is clear that the obligation imposed on Pelican was not to "construct" the roads, for they already were constructed. Pelican's obligation was to "construct" them in a "proper manner", which was defined by the deed as including ditches, drains and culverts. No other reasonable interpretation can be given to the deed's language. Pelican's interpretation would mean it could choose to do nothing and assert that the roads already had proper drainage. This would render the obligation imposed on Pelican by paragraph j illusory, while the grantees would still have to bear the maintenance expenses. The court rejects such a construction. Pelican was to construct ditches, drains and culverts, not roads.

 The defense of laches again is presented. This matter, however, is distinguishable from the tennis court dispute. While the plaintiff is guilty of an unreasonable delay in bringing this action, this has not in any way inured to the detriment of the defendant. To constitute laches defendant must show not only plaintiff's lack of diligence but that the defendant's injury was due to such lack of diligence. Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609 (1964). No reliance has been placed on plaintiff's acquiescence and no harm will befall the defendant from constructing the necessary ditches, drains and culverts, other than the expenditure of funds necessary to accomplish same, which should have been accomplished in any event. Accordingly, a mandatory injunction will issue ordering Pelican to construct adequate ditches, drains and culverts to provide proper drainage.

---

[67] See Defendants' Exhibit A, incorporated by reference into the 1958 deed; see also Tr. II at 34, 36–37; Tr. III at 27–32, 34.

*Windbreakers and Barbed Wire Along the Beach*

 The plaintiff alleges that the erection of wind-breakers and a barbed wire fence along a portion of Parcel 11B Prime is violative of the 50-foot easement conferred by paragraph k of the 1958 deed. There is no merit to this claim. The easement is for the plaintiff's "use . . . for recreational purposes." No showing has been made of even the slightest impairment of plaintiff's use or enjoyment of the beach since these structures were erected. On the basis of the court's observation, neither the windbreaker nor the "fence" could reasonably interfere with the plaintiff's enjoyment of her easement. Accordingly, plaintiff's request for an injunction with respect to these structures will be denied.

*Damages*

Plaintiff also had prayed for $30,000 compensatory and $20,000 punitive damages. As this court recently said with respect to compensatory damages,

the fact of damage as well as the amount of damage must be proven with reasonable certainty. The trier of fact is not at liberty to speculate, but must be able to find some basis in the evidence for fixing the award.

St. Thomas House, Inc. v. Barrows, 15 V.I. 435 (Terr. Ct. 1979); see also Munson v. Duval, 11 V.I. 615, 646 n. 13 (D.V.I. 1975); Tebbs v. Alcoa Steamship Co., Inc., 3 V.I. 186, 139 F.Supp. 56 (D.V.I. 1965), aff'd, 3 V.I. 592, 241 F.2d 276 (3d Cir. 1957); Restatement of Torts § 912 (1939). Moreover, in a case such as this one,

where the injury to real property is temporary the measure of damages, if the property is occupied by the owner, is limited to the diminution in the value of its use by the owner during the period of its injury. . . . Since there is no permanent injury in such a case, evidence as to diminished value of the property resulting from the injury is not relevant. (Citations omitted.)

Brannigan v. LaCrosse, 6 V.I. 96, 98 (D.V.I. 1967).

In the present action plaintiff's expert merely testified that the property would increase in value by $10,000 if direct access to the beach were provided to plaintiff at the easternmost point of 11B-3,[68] but by only $5,000 if access were provided at the southernmost corner of the property.[69] Assuming that these figures represent the actual diminished value of the property in its present state, they are not relevant to this action. To determine what, if any, loss Mrs. Schindel has suffered while she has occupied 11B-3 without such access would be the height of speculation. Although it would be reasonable to suppose that the wall without the fence was an inconvenience to the plaintiff and her husband between 1968 and 1976, and that erection of the fence in 1976 and the resulting alternative route to the beach along the common roads was an imposition on the plaintiff, any estimation by this court of plaintiff's damages would be without a factual basis.[70] Equally speculative and without any supporting basis are plaintiff's damages from defendant's failure to construct ditches, drains and culverts. The evidence would lead the court to believe plaintiff was inconvenienced, but to what extent would require a crystal ball.

Accordingly, plaintiff shall recover nothing by way of compensatory damages. She will, however, be awarded $100 in nominal damages, as it is clear to this court that she has suffered a compensable injury. Cf. St. Thomas House, Inc. v. Barrows, supra. (Nominal damages are "presumed to follow" from the violation of any legal right even if no actual damages are proven.)

---

[68] Point 2 on Appendix A.

[69] Point 12 on Appendix A.

[70] Plaintiff is a resident of Weston, Connecticut, Tr. I at 27, and with her husband also jointly owns Parcel No. 12A, Estate Smith Bay. According to her husband, they spend "four to eight weeks of the year on one property or the other," Tr. I at 78, and used the direct easterly access to the beach "almost daily when we were in residence here at the island." Tr. I at 89. However, according to Mr. Schindel, Mrs. Schindel has rented 11B-3 since June of 1976, Tr. I at 84, shortly after the fence was constructed.

■ Plaintiff also is not entitled to recover punitive damages. These are awardable in the sound discretion of the trial court. Robert L. Merwin & Co., Inc. v. Strong, 7 V.I. 282 (D.V.I. 1969), aff'd in part and rev'd in part, 7 V.I. 567, 429 F.2d 50 (3d Cir. 1970) ; see also Restatement of Torts, supra, § 908(2). Generally, it must be demonstrated that the guilty party's conduct is outrageous or that it was done with a bad motive or with a reckless indifference for the interests of others. Id.; St. Thomas House, Inc. v. Barrows, supra. Nothing in the record suggests that Pelican's conduct was in any way so motivated. Moreover, the court believes that the equitable relief it has decreed and the award of nominal damages grants the plaintiff the full relief to which she is entitled.