**DELIA THOMAS, HILARY ACTIVILLE, PERRY COWAN, ANDREA KING, DONALD KING, ALVIN PETROSKY, ROSE PETROSKY, ANTHONY ROMANO, ELLEN STEWART, CAROLYN TYSON, A. JEFFREY WEISS & RUSSELL WHITE, Appellants/Plaintiffs**

**v.**

**VIRGIN ISLANDS BOARD OF LAND USE APPEALS, ST. MARK'S COPTIC ORTHODOX CHURCH, INC., & ROBERT S. MATHES, COMMISSIONER VIRGIN ISLANDS DEPARTMENT OF PLANNING AND NATURAL RESOURCES, Appellees/Defendants**

S. Ct. Civil No. 2013-0001

Supreme Court of the Virgin Islands

February 24, 2014

580

A. JEFFREY WEISS, ESQ., A.J. Weiss & Associates, St. Thomas, USVI, *Attorney for Appellants*.

SHAWN E. MAYNARD-HAHNFELD, ESQ., Law Offices of Desmond L. Maynard, St. Thomas, USVI, *Attorney for Appellee St. Mark's Coptic Orthodox Church, Inc.*

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellees V.I. Bd. of Land Use Appeals & Comm'r, V.I. Dep't of Planning & Nat. Res.*[1]

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(February 24, 2014)

HODGE, *Chief Justice*. The Virgin Islands Board of Land Use Appeals ("BLUA") issued a Coastal Zone Management ("CZM") permit to St. Marks's Coptic Orthodox Church, Inc., to build a church and worship center on a parcel of land in Estate Nazareth, St. Thomas. Delia Thomas, Hilary Activille, Perry Cowan, Andrea and Donald King, Alvin and Rose Petrosky, Ellen Stewart, Anthony Romano, Carolyn Tyson, Russell White, and A. Jeffrey Weiss (collectively "Appellants") are neighboring land owners who oppose the construction of St. Mark's church. For the reasons that follow, we affirm the Superior Court's August 3, 2009 and November 30, 2012 Orders which, respectively, dismissed Appellants' claims against the BLUA and entered summary judgment in favor of St. Mark's.

## I. FACTUAL AND PROCEDURAL BACKGROUND

St. Mark's purchased two parcels of land located in Vessup Bay Estates, an area zoned R-1.[2] St. Mark's purchased Parcel No. 9-45 Estate Nazareth on October 5, 2002, from William H. Evans and Helen Evans, as trustees of the Evans 1992 Revocable Trust. Two days later, St. Mark's purchased Parcel No. 9-46 Estate Nazareth from James A. Evans, Jr. and Tewatenietha Evans, individually and as trustees of the James A. Evans

---

[1] In a January 13, 2014 Order, this Court denied Appellees Virgin Islands Board of Land Use Appeals and Commissioner Robert S. Mathes's motion for leave to file their brief out of time because we determined that there were no grounds on which to accept the untimely filing. Therefore, any arguments raised by these Appellees in their brief were not considered in this appeal.

[2] An R-1 zoning district is a residential low-density district, which allows as a matter of right artists' studios, dwellings (detached, single-family, and two-family), schools, swimming pools, etc.; an R-1 zoning district also allows — subject to the conditions set forth in sections 231 and 232 of title 29 — churches, synagogues, temples, religious quarters, community centers, fire and police stations, hospitals, golf courses, etc. 29 V.I.C. § 228.

Family Revocable Trust. St. Mark's consolidated its parcels into Consolidated Parcel 9-45 Estate Nazareth to meet the acreage requirement necessary to build a church in an R-1 zoning district. Besides being located in an area zoned R-1, the deeds to both parcels are subject to restrictive covenants. The restrictive covenant at issue here states that "[n]ot more than one single dwelling shall be erected on any subdivision parcel."

On April 7, 2006, St. Mark's submitted an application to the Virgin Islands Department of Planning and Natural Resources ("DPNR") for a major CZM permit to construct a church and worship center. The CZM Committee held a public hearing on St. Mark's permit application on June 28, 2006. Several of the Appellants, including Weiss, were present at the permit hearing and testified in opposition to St. Mark's application. Weiss also submitted a written opposition, individually and "on behalf of Vessup Lane Residents."

About a month later, on July 25, 2006, the CZM Committee denied St. Mark's application. Weiss requested in writing that the DPNR notify him should St. Mark's appeal the CZM Committee's decision. However, neither Weiss nor the other Appellants were personally notified when St. Mark's appealed to the BLUA on September 6, 2006. The BLUA informed the Virgin Islands community, through a notice published in the *Virgin Islands Daily News* on January 15, 2007, and January 22, 2007, that St. Mark's had appealed the CZM Committee's decision and that a public hearing on the appeal was scheduled for January 25, 2007. The day after the scheduled hearing, on January 26, 2007, the *Daily News* reported that the BLUA had voted to continue the hearing on St. Mark's appeal. Again, the BLUA published notice in the *Daily News* on March 30, 2007, and on April 9, 2007, informing the Virgin Islands community that another public hearing regarding St. Mark's appeal was scheduled for April 12, 2007.

On July 6, 2007, the BLUA reversed the decision of the CZM Committee and granted St. Mark's requested CZM permit. However, Appellants contend that they did not learn that St. Mark's had been granted a CZM permit until April 2009, when St. Mark's posted a sign on the property indicating it had obtained both CZM and building permits and began site clearing and preconstruction activities on Consolidated Parcel 9-45. Appellants brought suit against the BLUA, St. Mark's, and DPNR Commissioner Robert Mathes in Superior Court on April 24, 2009.

Appellants alleged that the BLUA and Commissioner Mathes violated their statutory and constitutional due process rights when the BLUA failed to personally serve them with notice that St. Mark's had appealed the CZM Committee's decision, as required by section 914(b) of title 12 of the Virgin Islands Code, thus depriving them of the opportunity to appear and oppose the issuance of the CZM permit at the BLUA hearing. Appellants also alleged that the BLUA deprived them of the opportunity to seek a writ of review because it failed to serve them with a copy of its decision, as required by section 914(c) of title 12. Lastly, Appellants alleged that St. Mark's violated Consolidated Parcel No. 9-45's restrictive covenants when it constructed a church on the property and that the church constitutes both a public and private nuisance.[3]

Appellants moved the Superior Court for a temporary restraining order to stop St. Mark's from constructing its church, which the Superior Court denied. In an August 3, 2009 Order, the Superior Court denied Appellants' motion for reconsideration of their application for a temporary restraining order and dismissed Appellants' claims for injunctive relief and a writ of review against the BLUA and Commissioner Mathes for lack of jurisdiction due to Appellants' failure to exhaust administrative remedies. A little over three years later, on November 30, 2012, the Superior Court entered summary judgment in favor of St. Mark's, holding that the restrictive covenants on Consolidated Parcel 9-45 did not prohibit construction of a church. The Superior Court also held that there was sufficient evidence on the record to deny Appellants' summary judgment motion seeking to establish that they had not abandoned or waived their right to enforce the restrictive covenants.

Appellants timely filed a notice of appeal,[4] arguing that the Superior Court incorrectly dismissed the claims against the BLUA and the

---

[3] Appellants did not raise the Superior Court's lack of attention to their nuisance claims as an issue on appeal until their reply brief, constituting waiver. *In re Welcome*, 58 V.I. 604, 608 n.2 (V.I. 2013) ("[a]ny argument that is raised for the first time in a reply brief is considered waived, because the [opposing party] will not receive a chance to respond." (quoting *Christopher v. People*, 57 V.I. 500, 513 n.7 (V.I. 2012))).

[4] Appellants mistakenly filed their notice of appeal with the Superior Court on December 28, 2012. However, Supreme Court Rule 5(a)(11) provides that a notice of appeal mistakenly filed with the Superior Court will be deemed filed in this Court on the date it was received by the Clerk of the Superior Court. V.I.S.CT.R. 5(a)(11). As a precaution, Appellants also filed a second notice of appeal with this Court on December 31, 2012.

Commissioner for lack of jurisdiction and that it erred in granting summary judgment to St. Mark's.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code states that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). An order is considered to be "final" for purposes of this statute if it "ends the litigation on the merits, leaving nothing else for the court to do except execute the judgment." *Williams v. People*, 55 V.I. 721, 727 (V.I. 2011). The Superior Court's November 30, 2012 Order fully adjudicated all issues between the parties, qualifying it as a final appealable order.[5]

This Court applies plenary review to the Superior Court's grant of summary judgment, *United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 707 (V.I. 2011), while the dismissal of a complaint is reviewed *de novo*. *Joseph v. Bureau of Corr.*, 54 V.I. 644, 649 (V.I. 2011). When reviewing a grant of summary judgment, this Court "appl[ies] the same test that the lower court should have utilized." *Joseph v. Inter-Ocean Insurance Agency, Inc.*, 59 V.I. 820, 823 (V.I. 2013) (citing *Pollara v. Chateau St. Croix, LLC*, 58 V.I. 455, 468 (V.I. 2013)). Issues of statutory construction are afforded plenary review. *V.I. Conservation Soc'y, Inc. v. Golden Resorts, LLLP*, 55 V.I. 613, 619 (V.I. 2011) (citing *V.I. Pub. Serv. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 483 (V.I. 2008)).

### B. Claims Against the BLUA and Commissioner Mathes

In their appellate brief, Appellants allege that the Superior Court erred when it dismissed their action for declaratory relief against the BLUA pursuant to section 913(b) of title 12, and its petition for writ of review pursuant to section 913(d) of title 12. We address each claim in turn.

---

[5] At the trial level, Appellants sought both declaratory and injunctive relief, but on appeal only challenge the dismissal of their claim for declaratory judgment — likely because St. Mark's completed construction on its church at some point after the Superior Court issued its August 3, 2009 Order dismissing Appellants' claim for an injunction. Therefore, any challenge to the dismissal of Appellants' claim for injunctive relief has been waived for purposes of appeal. *Harvey v. Christopher*, 55 V.I. 565, 571 (V.I. 2011); *Bernhardt*, 51 V.I. at 345-46 (V.I. 2009); V.I.S.Ct.R. 22(m).

## 1. *Section 913(b) Action*

The Superior Court, in its August 3, 2009 Order, held that Appellants' action for a declaratory judgment that the BLUA and Commissioner Mathes failed to personally serve them notice of the proceedings in violation of Virgin Islands law arose pursuant to section 913(b)(2), a statute providing, in pertinent part, that:

> [a]ny person may maintain an action to compel the performance of the duties specifically imposed upon the Commission or the Commissioner of any public agency by this chapter; provided, however, that no such action shall be brought prior to thirty days after written notice has been given to the Commission, its Committees, the Commissioner, or such public agency by the complainant specifying the duties which the complainant alleges have not been performed.

12 V.I.C. § 913(b)(2). Since Appellants failed to notify the BLUA or Commissioner Mathes of their failures thirty days before filing suit, the Superior Court concluded that it lacked jurisdiction over the matter.

On appeal, Appellants contend that their claim actually arose pursuant to section 913(b)(1), a provision that provides that "[a]ny person may maintain an action for declaratory and equitable relief to restrain any violation of this chapter." Importantly, section 913(b)(1), unlike section 913(b)(2), does not require that a plaintiff provide the BLUA with notice at least thirty days before filing suit in court. Appellants rely on this Court's decision in *V.I. Conservation Society* to support the proposition that section 913(b)(1) authorized their action.

We agree with the Superior Court that section 913(b)(1) is inapplicable to this matter. First, we note that Appellants have placed undue emphasis on our *V.I. Conservation Society* precedent. In that case, we held that the Superior Court erred when it declined to exercise jurisdiction pursuant to section 913(b)(1) because the plaintiff sought to enjoin the permit holder from further development under what the plaintiff alleged was a void and expired CZM permit. *V.I. Conservation Soc'y*, 55 V.I. at 621. Importantly, we emphasized that allowing the action against the permit holder to proceed under section 913(b)(1) "would not 'displace the [BLUA]'s function as an expert appellate panel' " because "there remained nothing for any administrative agency to do at this point." *Id.* at 621-22 (quoting *LaVallee Northside Civic Ass'n v. V.I. Coastal Zone Mgmt. Comm'n,*

23 V.I. 406, 411 (D.V.I. 1988)). In contrast, in this case, Appellants, while nominally requesting relief against the BLUA, Commissioner Mathes, and St. Mark's, do not allege that St. Mark's engaged in any independent wrongdoing with respect to its receipt of a permit or its compliance with the permit's terms and conditions; rather, the gravamen of their claim is that the BLUA violated their statutory and constitutional due process rights by failing to provide personal notice of St. Mark's appeal. Therefore, unlike *V.I. Conservation Society* — where the claim was brought against the permit holder — Appellants' main claim regarding the CZM permit is against the BLUA, which may have been able to remedy its own error upon proper notification.[6]

 A comparison of the plain text of the primary provisions in sections 913(b)(1) and 913(b)(2) leaves no doubt as to which provision governs Appellants' claim for declaratory relief. Section 913(b)(1) authorizes one to bring "an action for declaratory and equitable relief *to restrain any violation* of this chapter." (Emphasis added). In contrast,

_____

[6] We recognize that the Superior Court characterized the thirty-day notice period set forth in section 913(b)(2) as a jurisdictional requirement. However, as we have recently explained, a statutory time requirement is " 'jurisdictional' if it 'governs a court's adjudicatory capacity' . . . while a statute is 'claims-processing' if it 'seek[s] to promote the orderly process of litigation by requiring that the parties take certain procedural steps at certain specified times' but do[es] not intend to limit a court's authority to hear a case." *Brooks v. Gov't of the V.I.*, 58 V.I. 417, 424 n.5 (V.I. 2013) (quoting *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011)). This difference is important because "[w]hile claims-processing rules can be equitably tolled or even waived, courts have no authority to create equitable exceptions to jurisdictional requirements and litigants cannot by waiver or forfeiture confer jurisdiction where it is otherwise lacking.' " *Brady v. Cintron*, 55 V.I. 802, 815 (V.I. 2011) (quoting *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 524, 392 U.S. App. D.C. 202 (D.C. Cir. 2010)). Nevertheless, we need not determine, as part of this appeal, whether section 913(b)(2) codifies a jurisdictional requirement or a mandatory claims-processing rule, since (1) St. Mark's specifically invoked section 913(b)(2) at the July 24, 2009 hearing on Appellants' motion for reconsideration; and (2) Appellants' sole explanation for failing to comply with section 913(b)(2) — that they believed the BLUA could not retroactively cure its non-compliance with section 914(b)'s notice requirements — is insufficient to warrant excusing its non-compliance, given that the regulations promulgated by the BLUA provide that "[w]here these rules fail to provide sufficient guidance . . . the [BLUA] shall be guided by . . . the Federal Rules of Appellate Procedure insofar as practicable and in conformity with the general principles of due process." 12-21 V.I. CODE R.§ 914-12. In other words, had Appellants provided the BLUA with notice before filing suit, the BLUA likely would have, pursuant to its rules, consulted federal case law addressing the issue of how an appellate court should proceed when it discovers after issuing a decision that one of the parties to the appeal had never been served by the court.

section 913(b)(2) authorizes "an action *to compel the performance* of the duties specifically imposed upon the [BLUA]." (Emphasis added). In other words, the Legislature clearly envisioned that a plaintiff would bring a section 913(b)(1) suit to prohibit a defendant from taking a certain action, and initiate a section 913(b)(2) suit to require a defendant to take action. *Cf. In re People of the V.I.*, 55 V.I. 851, 856 n.4 (V.I. 2011) ("A writ of mandamus may seem more appropriate if the form of the order is to mandate action, and a writ of prohibition if the order is to prohibit action."). In this case, Appellants asked the Superior Court to issue a declaratory judgment stating that the BLUA violated their statutory due process rights when it failed to notify them about St. Mark's appeal and subsequent hearing. Appellants were not asking the Superior Court to restrain action by the BLUA, but rather to compel the BLUA to perform one of its statutory duties. The Superior Court was therefore correct in deciding that Appellants' claim arose pursuant to section 913(b)(2), and that Appellants were therefore required to notify the BLUA and Commissioner of their error at least thirty days before filing suit.

### 2. *Section 913(d) Action*

The Superior Court also denied Appellants' application for writ of review because they failed to appeal the BLUA's decision within forty-five days of the final decision, as required by section 913(d) of title 12.[7] Appellants argue it was not possible for them to appeal the BLUA's decision within forty-five days because they were never notified of the decision, in violation of their due process rights.

 We disagree. Even if we were to assume — without deciding — that the forty-five day appeals period set forth in section 913(d) represents a non-jurisdictional claims-processing rule which the Superior Court could equitably toll,[8] Appellants failed to meet their burden of proving

---

[7] "[A] petition for writ [of] review may be filed . . . in the case of any person aggrieved by the granting or denial of an application for a coastal zone permit, including a permit or lease for the development or occupancy of the trust lands or other submerged or filled lands, or the issuance of a cease and desist order, within forty-five days after such decision or order has become final provided that such administrative remedies as are provided by this chapter have been exhausted." 12 V.I.C. § 913(d).

[8] In both its August 3, 2009 Order and at the July 24, 2009 hearing, the Superior Court characterized the forty-five day period as being jurisdictional without citing to any legal authority or otherwise explaining its decision. "However, this Court has never broadly held that in

that their untimely filing should be excused. *See Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.") (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)). We previously noted that extraordinary circumstances warranting equitable waiver of a deadline may exist if an agency "has intentionally or negligently failed to perform its ministerial duties to such an extent" that a timely initiated appeal was not possible. *In re Rogers,* 56 V.I. 618, 627-28 (V.I. 2012). But while Appellants allege, and the BLUA does not dispute, that they were never personally notified when St. Mark's appealed the CZM Committee's decision to the BLUA, Appellants have failed to present any evidence that they diligently pursued their rights. In this case, St. Mark's appealed to the BLUA on September 6, 2006, and the BLUA published four notices in the *Daily News* in January, March, and April 2007. Even if none of the Appellants saw these notices, section 914 mandates that any appeal from the CZM Committee to the BLUA be taken within forty-five days. 12 V.I.C. § 914(a). Therefore, merely contacting the BLUA after expiration of the appeals period to verify that St. Mark's, in fact, did not take an appeal, would have alerted Appellants to the pending proceeding, thus allowing them to participate in any hearing and, if necessary, seek judicial review in the Superior Court. In other words, Appellants' decision to completely fail to follow-up on the matter for nearly three years, instead relying exclusively on the BLUA to provide them with notice, cannot constitute valid grounds for allowing an untimely petition for writ of review of the BLUA's decision. *Cf. Yeschick v. Mineta,* 675 F.3d 622, 630 (6th Cir. 2012) (finding no excusable neglect when attorney missed filing deadline as a result of not

---

every context, any requirement in any statute is a jurisdictional one." *Brooks,* 58 V.I. at 424. Although our earliest cases relied on *Bowles v. Russell,* 551 U.S. 205, 213, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007), for the proposition that statutory appeal limitation periods are always jurisdictional, the United States Supreme Court subsequently clarified "that *Bowles* should not be read to suggest that all time limits established by statute are jurisdictional," and we therefore modified our case law accordingly. *Brooks,* 58 V.I. at 425 (citing *Henderson v. Shinseki,* 131 S. Ct. 1197, 1203, 179 L. Ed. 2d 159 (2011)). However, since Appellants have failed to meet their burden of demonstrating their entitlement to equitable tolling, we need not determine, as part of this appeal, whether section 913(d) codifies a non-waivable jurisdictional requirement or a waivable claims-processing rule.

being electronically served with motion by court's case management system, when attorney made no effort to monitor the docket); *Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294, 363 U.S. App. D.C. 459 (D.C. Cir. 2004) (characterizing claim that attorney never received notice of motion through e-filing system as "the 'classic my dog ate my homework' line" that "even taken at face value, is plainly unacceptable"). Accordingly, the Superior Court correctly denied Appellants' petition for writ of review as untimely.

## C. Restrictive Covenant

Appellants also argue that the Superior Court erred in granting St. Mark's summary judgment motion because it incorrectly held that the restrictive covenants applicable to Consolidated Parcel 9-45 did not prohibit construction of a non-residential building, such as St. Mark's church. The particular covenant in question states that "[n]ot more than one single dwelling shall be erected on any subdivision parcel." According to Appellants, the Superior Court ignored the plain meaning of the word "dwelling" when it held that the covenant did not prohibit construction of a church, and ignored that the developers of Estate Nazareth intended to establish a purely residential community. Moreover, Appellants, relying on 1 V.I.C. § 4, contend that the Superior Court ignored the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.1 — which requires liberal construction of restrictive covenants[9] — and instead applied pre-existing case law providing that such covenants be strictly construed against encumbering property.

---

[9] This Restatement provision provides, in its entirety, as follows:

(1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.

(2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred.

RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.1. Section 4.1, as well as other provisions in the Third Restatement, were intended to "reform" rather than "restate" the law, thus representing a significant departure from the historical purpose of the restatements. V. William Scarpato, *"Is" v. "Ought," or How I Learned to Stop Worrying and Love the Restatement*, 85 TEMP. L. REV. 413, 414 (2013).

■ ■ Before reviewing the Superior Court's interpretation of the restrictive covenant, we must first ascertain whether the covenant should be liberally or strictly construed. As a threshold matter, we note that Appellants' reliance on 1 V.I.C. § 4 is misplaced, given that this statute was implicitly repealed by the Legislature when it enacted section 21 of title 4 and vested this Court with the "supreme judicial power of the Territory," which includes "the power to . . . modify the common law." *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 978-79 (V.I. 2011) (quoting 4 V.I.C. § 21); *see also Brunn v. Dowdye*, 59 V.I. 899, 911 n.10 (V.I. 2013) ("[T]he Restatements no longer constitute the rules of decision in Virgin Islands courts."); *Banks v. Int'l Rental & Leasing Corp.*, 680 F.3d 296, 299, 56 V.I. 999 (3d Cir. 2012) ("[I]n a commendably thorough and very well reasoned opinion, the Supreme Court of the Virgin Islands explained . . . that the Legislature did not intend for section 4 of title 1 to compel this Court to mechanically apply the most recent Restatement . . . ."). Therefore, to determine the appropriate common law rule, we must perform a *Banks* analysis, in which we consider "three non-dispositive factors: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 680-81 (V.I. 2012)).

■ As to the first factor, we note that no courts in the Virgin Islands have adopted the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES §4.1.[10] Rather, Virgin Islands courts have strictly construed restrictive covenants in a manner that allowed property owners to use their land to its greatest benefit. *See Grubel v. MacLaughlin*, 286 F. Supp. 24, 31-32, 6 V.I. 490 (D.V.I. 1968) (a valid zoning law prohibiting residential use

---

[10] In their appellate brief, Appellants contend that this Court "cited to the Superior Court's reliance on the Restatement (Third) of Property: Servitudes with approval," in *Brodhurst v. Frazier*, 57 V.I. 365 (V.I. 2012). However, we did not adopt any portion of the Third Restatement in *Brodhurst*, nor cite to the Superior Court's invocation of that Restatement with approval. On the contrary, we observed that the Superior Court's order granting summary judgment had been issued prior to the *Banks* decision, and expressly stated that "reversal of the summary judgment is required regardless of whether section 2.13 [of the Restatement (Third) of Property: Servitudes] applies to this case," and provided that "[o]n remand . . . the parties may brief the Superior Court as to whether it should apply section 2.13, or apply a different common law rule." *Brodhurst*, 57 V.I. at 369 n.3.

extinguished the enforceability of restrictive covenant requiring land be used for residential purposes only); *Jones v. Smith*, 241 F. Supp. 913, 915, 5 V.I. 129 (D.V.I. 1965) (restrictive covenant limiting construction to "a private residence only" was interpreted to permit a duplex); *Dalton v. Kosick*, 24 V.I. 222, 229 (V.I. Super. Ct. 1989) ("[I]t is a settled rule that when construing covenants restricting the use of land all doubts should be resolved in favor of the freer use of property and against restriction. However, that general rule should not be applied in such a way as to defeat the clear intent and plain and unambiguous purpose expressed in the restrictions." (internal citations omitted)); *Schindel v. Pelican Beach Inc.*, 16 V.I. 247, 250 (V.I. Super. Ct. 1979) (an ambiguous restriction in a deed must be construed against the drafter or those seeking to enforce such an ambiguous provision).

As to the second factor, many courts, like Virgin Islands local courts, still follow the historical common law preference for permitting the free use of land, and thus construing restrictive covenants narrowly.[11] Thus, in many jurisdictions, "[r]estrictive covenants, being in derogation of the common-law right to use land for all lawful purposes, are to be narrowly

---

[11] *See, e.g., Franklin Mills Associates, L.P. v. Nationwide Life Ins. Co.*, 836 F. Supp. 2d 238, 248 (E.D. Pa. 2011) ("Restrictive covenants, and particularly land use restrictions, are not favored by Pennsylvania law and are therefore strictly construed."); *White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187, 189 (2006) ("[A] restrictive covenant will be strictly construed against limitations on the free use of land. All doubts are resolved in favor of the unfettered use of land." (internal citations omitted)); *Marino v. Clary Lakes Homeowners Ass'n, Inc.*, 322 Ga. App. 839, 747 S.E.2d 31, 36 (2013) ("[R]estrictions on private property are generally not favored in Georgia," and thus "the basis for restricting the owner's use of his property must be clear and without doubt."); *Brown v. Perkins*, 129 Idaho 189, 923 P.2d 434, 437 (1996) ("Because restrictive covenants are in derogation of the common law right of a person to use land for all lawful purposes, covenants are not to be construed to extend by implication any restriction not clearly expressed in the covenants."); *400 Condominium Ass'n v. Gedo*, 183 Ill. App. 3d 582, 539 N.E.2d 256, 257, 131 Ill. Dec. 903 (1989) ("Because restrictions on the free use of property are disfavored, restrictive covenants are to be strictly construed and will be enforced only if they are reasonable, clear and definite. Any doubts or ambiguities in the language of the covenant will be resolved against the restriction." (internal citations omitted)); *Adel v. NFPS, Inc.*, No. C-108-10, 2013 N.J. Super. Unpub. LEXIS 1390 (N.J. Super. Ct. June 10, 2013) (unpublished) (Restrictive covenants "are always to be strictly construed, and courts will not aid one person to restrict another in the use of his land unless the right to restrict is made manifest and clear in the restrictive covenant."); *J.T. Hobby & Son, Inc. v. Family Homes of Wake County, Inc.*, 302 N.C. 64, 274 S.E.2d 174, 179 (1981) ("The rule of strict construction is grounded in sound considerations of public policy: It is in the best interests of society that the free and unrestricted use and enjoyment of land be encouraged to its fullest extent.").

construed and are not to be extended by implication. If their language is of doubtful meaning, it will be construed against rather than in favor of the covenant." *Neptune Park Assn. v. Steinberg*, 84 A.2d 687, 690 (Conn. 1951).

Finally, as to the third and most important factor, we conclude that covenants attached to property in the Virgin Islands should continue to be construed narrowly to promote the free use of land. Land in the Virgin Islands is a particularly valuable and scarce resource, and the Legislature has already established comprehensive zoning regulations governing its use. Moreover, given that Virgin Islands courts have strictly construed restrictive covenants for decades, it would be highly disruptive to adopt the new rule set forth in section 4.1 of the Third Restatement, particularly when many older covenants — including the one in this case — were drafted during a period in which most, if not all, jurisdictions endorsed the principle that such covenants must be strictly construed. Accordingly, we decline to adopt section 4.1 of the Third Restatement, and instead join the majority of other jurisdictions in holding that a "restrictive covenant will be strictly construed against limitations on the free use of land," with "[a]ll doubts [to be] resolved in favor of the unfettered use of land." *White v. McGowen*, 364 Ark. 520, 222 S.W.3d 187, 189 (2006).

With that principle in mind, we now turn to the Superior Court's interpretation of the restrictive covenant. At the outset, we agree with Appellants that the Superior Court committed an error in its analysis. The Superior Court determined that the covenant modifies the R-1 zoning laws to limit the number of dwellings that can be erected on each parcel of land from the "not more than two (2) dwelling units" permitted in an R-1 zone to "not more than one single dwelling." However, zoning laws were not established in the Virgin Islands until October 1, 1972, *see* 29 V.I.C. § 221 (1972 V.I. Sess. Laws 260), five years after the property in question was subjected to the covenants. Therefore, the covenant could not have intended to modify the R-1 zoning law. *See also Bachman v. Hecht*, 659 F. Supp. 308, 315 (D.V.I. 1986) (zoning in the Virgin Islands was not established until 1972, therefore "[z]oning ordinances at variance with covenants do not modify or [supersede] the covenant restrictions" already in effect (citations omitted)).

Nevertheless, we conclude that the Superior Court correctly granted St. Mark's motion for summary judgment. As noted above, the covenant provides that "[n]ot more than one single dwelling shall be erected on any

593

subdivision parcel." While Appellants contend that "the language in the restriction is clear and unambiguous" because the word "dwelling" has a "common meaning" that refers to "a specific type of building," that is occupied as a residence, the ambiguity in the covenant stems not from the language that is in the covenant, but from what has been omitted. Even if we were to agree with Appellants that a church cannot satisfy the common meaning of the word "dwelling,"[12] the restrictive covenant is subject to two very different interpretations. On one hand, one could interpret the language as only authorizing a single "dwelling" and no other structures, whether or not those additional structures would qualify as a "dwelling." On the other hand, the language could also mean that a landowner can build as many structures as he or she desires, so long as there is not more than one "dwelling." Notably, courts, when interpreting similar covenants containing express limitations on a particular type of structure but not referring to other types of structures, have reached different results as to the meaning of such language.[13] Importantly, as the Superior Court observed in its November 30, 2012 Order, the drafter of the restrictive covenant, had he intended to limit construction solely to a single dwelling and nothing else, could have easily eliminated the ambiguity by stating that a landowner could erect *only* a single dwelling, or by forbidding construction of any non-dwelling structures. *See, e.g., Smith v. Second Church of Christ, Scientist*, 87 Ariz. 400, 351 P.2d 1104, 1105, 1107-09 (1960) (restrictive covenant that stated "property shall be used for single dwelling houses only" was interpreted to prohibit construction of church);

---

[12] Because St. Mark's has admitted that no part of its building is intended for residential use, we need not decide the question of whether the word "dwelling" will always exclude a church.

[13] *Compare Bucklew v. Trustees Bayshore Baptist Church*, 60 So. 2d 182, 182-83 (Fla. 1952) (a restrictive covenant that stated "only one residence building shall be erected on any one lot on said subdivision" was interpreted to prohibit construction of a church) *with Scott v. Bd. of Missions N.C. Annual Conf.*, 252 N.C. 443, 114 S.E.2d 74, 75 (1960) (restrictive covenant stated that "[t]here shall not be constructed on said lot more than one (1) dwelling house" was interpreted so that "owners of lots in the subdivision under consideration may not build more than one residence on each lot owned, but there is no restriction limiting the use of the property for residential purposes only, or prohibiting the building of a residence or other building on more than one lot"); *Buck v. Dunn*, 1954 OK 253, 275 P.2d 296, 298-99 (1954) (a restrictive covenant, which also expressly prohibited construction of buildings for business purposes, stated that "[o]nly single-family, detached residences, not to exceed two stories in height . . . may be constructed and/or located on any of the Lots" was interpreted to restrict the size of any residences on a parcel of land, not to prohibit the construction of a church).

*Bucklew v. Trustees Bayshore Baptist Church*, 60 So. 2d 182, 182-83 (Fla. 1952) (a restrictive covenant that stated "only one residence building shall be erected on any one lot on said subdivision" was interpreted to prohibit construction of a church).

 ██ Because the language of the restrictive covenant does not expressly forbid the construction of non-dwellings and the drafter could have easily included such language, it "is susceptible to multiple interpretations by a reasonable person" rendering it "ambiguous." *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co.*, 434 Md. 37, 73 A.3d 224, 233 (2013). Consequently, since the restrictive covenant may not be enforced against St. Mark's in the manner Appellants seek due to this ambiguity,[14] *see Schindel*, 16 V.I. at 250, we hold that Superior Court correctly granted summary judgment, and that the covenant at issue here does not prohibit St. Mark's from building a church on Consolidated Parcel 9-45.[15]

### III. CONCLUSION

The Superior Court correctly determined that section 913(b)(2) of title 12 governed Appellants' action for declaratory relief because Appellants were asking the court to compel the BLUA to perform its statutory duty. It also correctly dismissed Appellants' untimely writ of review, the late filing of which could not be excused. This Court rejects the usage of section 4.1 of the Restatement (Third) of Property: Servitudes in favor of narrowly construing covenants in promotion of the free use of land, consistent with longstanding Virgin Islands law. Under this standard, the restrictive covenant at issue does not prohibit the construction of a church.

---

[14] *See, e.g., Allen v. Reed*, 155 P.3d 443, 446 (Colo. App. 2006); *Hiner v. Hoffman*, 90 Haw. 188, 977 P.2d 878, 885-86 (1999); *Allen v. Sea Gate Ass'n, Inc.*, 119 N.C. App. 761, 460 S.E.2d 197, 199 (1995); *Ludgwig v. Chautauqua Shores Improvement Ass'n, Inc.*, 774 N.Y.S.2d 240, 241 (N.Y. App. Div. 2004) ("the scope of the covenant 'is uncertain, doubtful, or debatable,' thus rendering it unenforceable as applied to plaintiff's residence"). Since a court may only enforce a restrictive covenant if it is clear and unambiguous, we also reject Appellants' contention that the Superior Court should have considered extrinsic evidence to resolve the ambiguity, such as evidence that the drafter of the covenant intended to establish a purely residential community.

[15] Because we have held that the restrictive covenant does not prohibit the construction of a church, it is not necessary for us to reach the issue of whether the Superior Court correctly denied Appellants summary judgment on the issue of whether they had abandoned or waived their right to enforce the restrictive covenant.

Therefore, we affirm both the Superior Court's August 3, 2009 and November 30, 2012 Orders.