**KIMO A. BONELLI, SR., Appellant/Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, VIRGIN ISLANDS FIRE SERVICE, Appellee/Defendant**

S. Ct. Civil No. 2015-0047

Supreme Court of the Virgin Islands

July 28, 2017

KIMO A. BONELLI, SR., St. Thomas, USVI, *Pro se.*

JOSS N. SPRINGETTE, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(July 28, 2017)

CABRET, *Associate Justice.* Kimo A Bonelli, Sr. appeals from the Superior Court's March 20, 2015 memorandum opinion and order, which dismissed his complaint with prejudice for failure to timely assert various claims against the Virgin Islands Fire Service (the "Service"). Because Bonelli did not assert his claims in a timely manner and has not established that the applicable deadlines should be equitably tolled, we affirm the Superior Court's ruling.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 11, 2007, the Service informed Bonelli that he had been selected as recruit firefighter. On August 1, 2007, the Service directed Bonelli to report to orientation for a 16-week basic firefighting training course.

Bonelli professes to be a member of the Rastafari faith. According to Bonelli, the precepts of his faith preclude "any cutting or shaving of facial hair or of locks on your head." To uphold these precepts, Bonelli wears dreadlocks and a full beard. This practice directly contradicts the Service's rules and regulations concerning facial hair.[1]

On September 21, 2007, the Service informed Bonelli that he must groom his facial hair to conform to the Service's rules and regulations. Bonelli refused to trim his beard, and on September 27, 2007, the Service placed

---

[1] The Service's rules and regulations permit: mustaches "if they are styled and trimmed so as not to protrude below the upper lip"; hair that extends "no further than the middle of the shirt collar"; and sideburns that "extend no further than the angle of the jaw" and are "no more than 1½ inches at the widest point."

Bonelli on leave without pay for failing to conform his appearance to the Service's grooming standards. On that same day, the Service issued a "Notice of Personnel Action" for Bonelli, which was to become effective on October 15, 2007, and which listed the nature of the action as "dismissal."

On October 5, 2007, Bonelli traveled to St. Croix to perform fit tests to determine whether his facial hair would impede his ability to wear a respirator mask. Bonelli failed the tests. On October 9, 2007, Bonelli filed a discrimination complaint with the Government of the Virgin Islands Civil Rights Commission, claiming that the Service discriminated against him because of his religious beliefs.[2] On October 15, 2007, the Service recommended that Bonelli be terminated "on the basis of his continuing failure to follow a directive . . . to cut his beard so that it will not interfere with the proper fitting of his safety gear." Bonelli wrote to the Service on October 22, 2007, requesting that his termination be reviewed. But on October 23, 2007, then-Governor John P. de Jongh approved the Service's recommendation to terminate Bonelli.

Bonelli initially challenged his termination on two fronts. First, on December 21, 2007, Bonelli filed a charge of discrimination against the Service with the Equal Employment Opportunity Commission ("EEOC"). On May 4, 2009, the EEOC determined that it was unable to conclude whether the Service violated Title VII of the Civil Rights Act of 1964, and accordingly, closed Bonelli's file. On that same date, the EEOC notified Bonelli that he had 90 days to sue the Service in the Superior Court for its alleged Title VII violation.

Second, on September 17, 2008, Bonelli appealed his termination to the Public Employees Relations Board ("PERB"), alleging that he was terminated on the basis of his religion in violation of section 531 of title 3 of the Virgin Islands Code. By order dated February 28, 2013, the PERB dismissed Bonelli's claim under section 531 of title 3 with prejudice, reasoning that Bonelli, who had appealed to the PERB nearly one year after his termination, was neither an applicant nor an employee of the Government of the Virgin Islands at the time he filed his appeal.

Following his unsuccessful appeals to the EEOC and the PERB, Bonelli filed a *pro se* complaint against the Service in the Superior Court of the Virgin Islands on April 24, 2013. In his complaint, Bonelli purported to state

---

[2] This complaint appears nowhere in the record.

seven causes of action. Count one, captioned as a claim for "discrimination," alleges that the Service's actions violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb-1 - 2000bb-4. Count two, captioned as a claim for "negligence," alleges that the Service's termination of Bonelli constituted an unfair labor practice, as defined by section 65 of title 24 of the Virgin Islands Code. Count three, also captioned as a claim for "negligence," alleges that the Service's termination of Bonelli violated the Virgin Islands Code's prohibition on the use of questions framed to elicit religious opinions or affiliations in the government's hiring and promotion process, codified in section 531 of title 3. Count four of Bonelli's complaint purports to state a claim for "vicarious liability" against the Service, and alleges that Bonelli's termination violates section 129 of title 24, which only permits employers to discharge "a resident worker who has replaced a nonresident worker" pursuant to the provisions of chapter 6 of title 24 "for incompetence, insubordination, misconduct, violation of employers' rules and regulations or other just case." Counts five and six of Bonelli's complaint purport to state claims for "vicarious liability" and "strict liability" respectively, but neither count cites authority to support those claims. Finally, count seven purports to state a claim for punitive damages.

The Service moved for judgment on the pleadings on December 31, 2014, arguing that Bonelli failed to state claims on which relief can be granted, and that Bonelli's claims were untimely. Bonelli filed a response in opposition, again alleging that the Service violated the RFRA, section 65 of title 24, and section 531 of title 3. Nowhere in his response did Bonelli address the timeliness of his claims. The Service filed a reply on March 1, 2015, in which it argued again, among other things, that Bonelli's claims were untimely and not subject to equitable tolling.

In response to the Service's motion for judgment on the pleadings, the Superior Court entered an order on March 20, 2015, dismissing Bonelli's complaint with prejudice. In its memorandum opinion, the Superior Court ruled that count one of Bonelli's complaint was untimely and meritless, and that the remainder of Bonelli's claims sounded in tort, but were untimely under the Virgin Islands Tort Claims Act, ("VITCA"), 33 V.I.C. §§ 3401-3417. Bonelli filed a timely notice of appeal on May 15, 2015.[3]

---

[3] In its brief, the Service asserts that Bonelli's notice of appeal is untimely under Virgin Islands Supreme Court Rule 5(a)(1). But although that rule provides that a notice of appeal

## II. JURISDICTION

This Court has jurisdiction over all "all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a). An order that dismisses all counts of a plaintiff's complaint with prejudice is a final order within the meaning of this statute. *See, e.g., Alexander v. Alexander*, 65 V.I. 372, 377 (V.I. 2016). The Superior Court's March 20, 2015 memorandum opinion and order dismissed all counts of Bonelli's complaint with prejudice, and therefore represents an appealable final order over which we have jurisdiction.

## III. DISCUSSION

■ "We review the trial court's grant of a motion for judgment on the pleadings under a de novo standard, and apply the same test a trial court should use." *Benjamin v. AIG Ins. Co. of Puerto Rico*, 56 V.I. 558, 565-66 (V.I. 2012) (citing *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). "A motion for judgment on the pleadings should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Id.* at 566 (quoting *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004)) (internal quotation marks omitted). In reviewing the Superior Court's decision to grant a motion for judgment on the pleadings, we view the facts alleged in the pleadings and the inferences to be drawn from them in a light most favorable to the plaintiff, and "we are foreclosed from considering evidence from any source outside of the pleadings and the exhibits attached to the pleadings." *Id.* (citations omitted).

Bonelli's complaint purports to state seven causes of action. We address each in turn.

### A. Alleged violation of the Religious Freedom Restoration Act

■ Under count one of his complaint, Bonelli alleges that the Service's actions violate the RFRA. Under the RFRA, the "Government shall not

---

shall be filed within 30 days after the date of entry of the judgment or order appealed from, it enlarges the period for filing a notice of appeal from 30 to 60 days "if the Government of the Virgin Islands . . . or an officer or an agency thereof is a party" to the appeal. *See* V.I. R. APP. P. 5(a)(1) (permitting "any party" to file the notice of appeal within 60 days if the Government is a party); *see also Bryan v. Gov't of the V.I.*, 56 V.I. 451, 455 (V.I. 2012) ("Under the rules of this Court, a party to a civil suit has sixty days from the date of the final order to file an appeal where the Government is a party.").

719

substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates that its burden "is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. The RFRA creates a private right of action for any person "whose religious exercise has been burdened in violation of [the RFRA.]" *Id.* § 2000bb-1(c); *Hawa Abdi Jama v. Esmor Corr. Servs.*, 577 F.3d 169, 172 n.4 (3d Cir. 2009). Since the RFRA does not provide a statute of limitations and was enacted after 1990, any action under the RFRA must be brought within four years from the date that the cause of action accrues. *See* 28 U.S.C. § 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."); *see also Jama v. U.S. Immigration & Naturalization Serv.*, 343 F. Supp. 2d 338, 365 (D.N.J. 2004) ("RFRA has a statutory four-year statute of limitations.").[4]

The Superior Court reasoned that "nothing in the RFRA alters the exclusive nature of Title VII with regard to employees' claims of religion-based employment discrimination," and characterized Bonelli's RFRA claim as a claim under Title VII of the Civil Rights Act of 1964. Title VII permits the alleged victim of unfair labor practices to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(b). Unfair labor practices under Title VII include an employer's discrimination against an employee on the

---

[4] The Supreme Court of the United States has held that the RFRA is "unconstitutional as applied to state and local governments because it exceeded Congress' power under § 5 of the Fourteenth Amendment." *Sossamon v. Texas*, 563 U.S. 277, 281, 131 S. Ct. 1651, 179 L. Ed. 2d 700 (2011) (citing *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997)). However, the Supreme Court has not yet determined whether the RFRA remains operative with respect to the territorial possessions of the United States. *See Cutter v. Wilkinson*, 544 U.S. 709, 715 n.2, 125 S. Ct. 2113, 161 L. Ed. 2d 1020 (2005). At least one federal circuit court of appeal has concluded that the RFRA is constitutional as applied to territories of the United States. *See Guam v. Guerrero*, 290 F.3d 1210, 1221-22 (9th Cir. 2002) (reasoning that Congress has plenary authority over territories). Neither the parties nor the Superior Court acknowledged the possibility that the RFRA does not operate in this jurisdiction. Nevertheless, even if we assume that the RFRA is constitutional as applied to this jurisdiction, Bonelli's RFRA claim still fails because it is untimely, as discussed below. *See Francis v. People*, 57 V.I. 201, 215-16 (V.I. 2012) (recognizing that courts possess an obligation to avoid deciding constitutional issues needlessly (quoting *Christopher v. Harbury*, 536 U.S. 403, 417, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002))).

basis of the employee's religion. *See* 42 U.S.C. § 2000e-2(a). If the EEOC dismisses a charge, or fails to file a civil action or enter into a conciliation agreement to which the aggrieved person is a party within 180 days of the filing of a charge, the EEOC shall notify the aggrieved person. 42 U.S.C. § 2000e-5(f)(1). "[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." *Id.*

 Initially, we note that there is some uncertainty whether a party may use the RFRA as an alternate avenue of bringing a claim of religious-based employment discrimination. The few courts that have addressed the issue have concluded that Title VII remains the sole remedy for alleged victims of religious-based employment discrimination. *See, e.g., Harrell v. Donahue*, 638 F.3d 975, 984 (8th Cir. 2011) ("RFRA was not intended to broaden the remedies for federal employment discrimination beyond those that already existed under Title VII. As a result, [the plaintiff's] claims under RFRA are barred because Title VII provides the exclusive remedy for his claims of religious discrimination."); *Francis v. Mineta*, 505 F.3d 266, 271, 49 V.I. 1147 (3d Cir. 2007) ("The legislative history that we have discussed demonstrates that Congress did not intend RFRA to create a vehicle for allowing religious accommodation claims in the context of federal employment to do an end run around the legislative scheme of Title VII."); *Holly v. Jewell*, 196 F. Supp. 3d 1079, 1090-91 (N.D. Cal. 2016) ("In conclusion, upon review of RFRA, its legislative history, and cases interpreting RFRA, the court finds that Title VII remains the exclusive remedy for religious discrimination in federal employment. Plaintiff's RFRA claim is therefore dismissed."). However, we need not determine whether Title VII preempts the RFRA in the field of religious-based employment discrimination claims because Bonelli's claim is untimely regardless of whether we apply the RFRA's four-year statute of limitations or Title VII's 90-day deadline for filing civil actions. All of the Service's actions complained of by Bonelli allegedly occurred in 2007 and the EEOC notified Bonelli of his right to sue on May 4, 2009, yet Bonelli filed his complaint in the Superior Court in April of 2013, well past the expiration of the RFRA's four-year statute of limitations and Title VII's 90-day deadline.

 But Title VII's 90-day filing provision represents "a requirement subject to waiver as well as tolling when equity so requires." *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). The federal "catch all" statute of limitations that applies to

the RFRA may also be subject to equitable tolling. *See, e.g.*, *Lattisaw v. District of Columbia*, 118 F. Supp. 3d 142, 158 (D.D.C. 2015) (considering and rejecting plaintiff's argument that the limitations period prescribed by 28 U.S.C. § 1658(a) should be tolled), *aff'd* 672 Fed. Appx. 22 (D.C. Cir. 2016); *In re Parmalat Sec. Litig.*, 493 F. Supp. 2d 723, 731 (S.D.N.Y. 2007) (tolling the limitations period prescribed by 28 U.S.C. § 1658(b)), *aff'd sub nom. Bondi v. Capital & Fin. Asset Mgmt. S.A.*, 535 F.3d 87 (2d Cir. 2008); *see also Fernandez-Torres v. Watts*, Civ. Action No. 2:16-cv-24, 2016 U.S. Dist. LEXIS 23964, at *14 n.4 (S.D. Ga. Feb. 26, 2016) (observing that the RFRA's statute of limitations may be subject to equitable tolling). However, the party seeking the benefit of equitable tolling bears the burden of establishing their entitlement to it. *See Thomas v. V.I. Bd. of Land Use Appeals*, 60 V.I. 579, 588-89 (V.I. 2014) (" 'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.' " (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005))). Since Bonelli does not claim that the deadline for filing his RFRA cause of action should be equitably tolled, he has not established his entitlement to any such tolling. Accordingly, we apply the deadlines prescribed by Congress and conclude that Bonelli's first cause of action is time-barred.

## B. Allegations of unfair labor practices

Under count two of his complaint, Bonelli alleges that the Service violated subsections 3, 4, and 7 through 10 of section 65 of title 24 of the Virgin Islands Code. Section 65 of title 24 codifies various unfair labor practices. A person who alleges that his or her employer has engaged in any of these practices may file a complaint with the Commissioner of Labor, who shall then hold a hearing to determine if the employer has engaged in such practices. *See* 24 V.I.C. § 68(b)-(c). Any person aggrieved by the Commissioner's decision may appeal to the Superior Court. *See* 24 V.I.C. § 70(a).

█ Although Bonelli cited section 65 of title 24 in his complaint, the Superior Court construed count two of Bonelli's complaint as a common-law claim for negligence, in accordance with its caption. Accordingly, the Superior Court looked to the timeliness provisions of the VITCA and determined that count two of Bonelli's complaint was untimely. However,

"a pleading filed *pro se* is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Smith v. Employees of the Bureau of Corr.*, 64 V.I. 383, 392 (V.I. 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)) (internal quotation marks omitted). By construing count two based on its title rather than its substance, the Superior Court failed to liberally construe Bonelli's complaint, despite the document's clear citation to section 65 of title 24. The Superior Court further failed to consider whether the deadlines prescribed by the VITCA represented jurisdictional limitations or mere claims-processing rules.

■■ These shortcomings do not mandate reversal, however, because a complainant's failure to exhaust administrative remedies constitutes a sufficient basis for dismissing related civil causes of action. *See, e.g., Chapman v. Cornwall*, 58 V.I. 431, 441 (V.I. 2013) (concluding that a complainant's failure to exhaust available administrative remedies constituted sufficient justification for entering summary judgment against him). Here, the record contains no indication that Bonelli availed himself of the statutory procedure for adjudicating allegedly-unfair labor practices codified in sections 68 and 70 of title 24. *See* 24 V.I.C. § 68 (permitting a victim of allegedly-unfair labor practices to complain to the Commissioner of Labor, and empowering the Commissioner of Labor to adjudicate such a complaint); 24 V.I.C. § 70 (permitting any person aggrieved by a final order of the Commissioner of Labor to appeal that order to the Superior Court within 30 days of its issuance). The record reveals that Bonelli complained to the Virgin Islands Civil Rights Commission, the EEOC and to the PERB, but not to the Commissioner of Labor as permitted under section 68(a) of title 24. Since Bonelli failed to exhaust the administrative remedies for challenging the Service's labor practices before filing suit, the Superior Court did not err in dismissing count two of his complaint.

## C. Allegations of discrimination in hiring

Under count three of his complaint, Bonelli alleged that the Service discriminated against him during the hiring process. Generally, appointments to governmental positions must be made on the basis of merit and fitness, as determined by competitive examinations. *See* 3 V.I.C. § 521. No question in any application or examination may elicit

information concerning the applicant's religious affiliations, however, and the government may not discriminate against an applicant because of the applicant's religious opinions or affiliations. 3 V.I.C. § 531(a). "Any applicant or employee who has reason to believe that he has been discriminated against because of religious . . . affiliations" may appeal the decision to the PERB. 3 V.I.C. § 531(b). Any such appeal must be taken within "180 days from the date the alleged discriminatory conduct is known by the applicant or the employee." 3 V.I.C. § 531(c). "Any party aggrieved by any final order of the PERB . . . may appeal to the Superior Court," but must do so "within 30 days after the date of the [f]inal [o]rder" and must "name the PERB as a party respondent" in that proceeding. 3 V.I.C. § 530a(a).

As with count two of Bonelli's complaint, the Superior Court construed count three as a claim for negligence based on its caption — despite count three's specific citation to section 531 of title 3 — and applied the VITCA's deadlines to conclude that count three was time-barred. In doing so, the Superior Court not only failed to liberally construe count three, but also failed to consider whether the deadlines imposed by the VITCA represented jurisdictional limitations or claims processing rules.

■ Nevertheless, these shortcomings do not justify reversal because application of the proper statutory framework necessitates the conclusion that count three of Bonelli's complaint is untimely. The applicable provisions of title 3 obligated Bonelli to appeal the PERB's decision within 30 days. 3 V.I.C. § 530a(a). The PERB rejected Bonelli's claim on February 28, 2013, but Bonelli did not file his complaint with the Superior Court until April 24, 2013, well after the 30-day deadline provided by section 530a had expired.

■ We have not previously determined whether the filing deadline set forth in section 530a(a) constitutes a jurisdictional limitation or a claims-processing rule. *See V.I. Narcotics Strike Force v. Gov't of the V.I. Pub. Emps. Rel. Bd.*, 60 V.I. 204, 215 n.8 (V.I. 2013) (declining to address the issue). This distinction is not merely academic, because although deadlines imposed by claims-processing rules may be equitably tolled, jurisdictional deadlines may not be modified. *See First Am. Dev. Grp./Carib, LLC v. WestLB AG*, 55 V.I. 594, 611 (V.I. 2011) (citing *Bowles v Russell*, 551 U.S. 205, 214, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007)). Yet we need not reach the issue here because even if section

724

530a(a)'s deadline represents a claims-processing rule, Bonelli has not established that he is entitled to the equitable tolling of that deadline. *See Thomas*, 60 V.I. at 588-89 (citing *Pace*, 544 U.S. at 418) (the party seeking equitable tolling bears the burden of establishing his entitlement to it). Accordingly, we affirm the Superior Court's dismissal of count three of Bonelli's complaint as untimely.

### D. Alleged deprivation of preference in hiring

Under count four of his complaint, Bonelli alleges that the Service deprived him of his preference in employment that he is entitled to as a Virgin Islands resident. In the Virgin Islands, "[r]esident workers shall be given preference in employment in the Virgin Islands in any industry or occupation for which such workers are qualified and available." 24 V.I.C. § 126. The Virgin Islands Code permits employers to terminate nonresident workers in order to hire resident workers under certain circumstances, *see* 24 V.I.C. § 129(a), and provides that resident workers hired in this manner "may not be discharged except for incompetence, insubordination, misconduct, violation of employers' rules and regulations or other just cause[.]" *Id.* § 129(b). A party aggrieved by an employer's decision under these provisions may file a complaint with the Commissioner of Labor, *see* 24 V.I.C. § 132, and anyone aggrieved by a decision or order of the Commissioner of Labor may appeal to the Superior Court within ten days of the decision. *See* 24 V.I.C. § 133.

Similar to its treatment of counts two and three, the Superior Court characterized count four of Bonelli's complaint as a claim for "vicarious liability" in accordance with its caption and applied the VITCA's deadlines to find count four untimely — despite the fact that count four specifically cites to sections 126 and 129 of title 24. In doing so, the Superior Court failed to liberally construe Bonelli's *pro se* complaint, and again failed to address whether the VITCA's deadlines represented jurisdictional limitations or mere claims-processing rules.

■ Nevertheless, count four of Bonelli's complaint fails for the same reason as count two: Bonelli failed to exhaust the administrative remedies prescribed by title 24. Specifically, section 132 of title 24 obligated Bonelli to file a complaint with the Commissioner of Labor before seeking redress in the Superior Court. *See* 24 V.I.C. § 132(a) ("The Commissioner shall investigate all complaints involving violations of these regulations, and after notice and hearing issue an order disposing of

the matter."). Since Bonelli failed to do so, count four of his complaint was properly dismissed.

### E. Bonelli's remaining claims

■ Under counts five and six, Bonelli claims damages under the theories of vicarious liability and strict liability, respectively. Under count seven, Bonelli purports to state a claim for punitive damages. Since a request for punitive damages is not an independent cause of action, *see Molloy v. Independence Blue Cross*, 56 V.I. 155, 176 n.5 (V.I. 2012), we need only evaluate whether counts five and six should have survived the Service's motion for judgment on the pleadings.

■ Under the VITCA, "a claim to recover damages . . . for personal injury caused by the tort of an officer or employee of the Government of the United States Virgin Islands . . . shall be filed within ninety days after the accrual of such claim unless the claimant shall within such time file a written notice of intention to file a claim therefor, in which event the claim shall be filed within two years after the accrual of such claim." 33 V.I.C. § 3409(a). Bonelli did not file a notice of intention to file a claim with the government, and although the Service's allegedly-tortious actions occurred in 2007, Bonelli did not file his claim until 2013 — well after the VITCA's 90-day window had closed.

The Superior Court reached the same conclusion, but as with its analysis of Bonelli's earlier counts, the Superior Court did not consider whether the VITCA's deadlines represented jurisdictional limitations or claims processing rules. But the distinction is irrelevant to Bonelli, who has not sought the equitable tolling of the VITCA's filing deadlines. Therefore, regardless of what label we apply to the VITCA's deadlines, those deadlines still operate to preclude Bonelli's fifth and sixth causes of action.

### IV. CONCLUSION

Deadlines matter, and will be enforced so long as they do not represent claims-processing rules subject to equitable tolling. Bonelli failed to propound his claims within statutorily mandated deadlines, and has provided no justification that would warrant the equitable tolling of those deadlines. Consequently, the Service was entitled to judgment as a matter of law on each of Bonelli's claims, and we affirm the Superior Court's March 20, 2015 memorandum opinion and order.